**GENERAL CONTRACT PURCHASE CORPORATION et al. v. ARMOUR et al.**

**ARMOUR et al. v. GENERAL CONTRACT PURCHASE CORPORATION et al.**

No. 9875.

Circuit Court of Appeals, Fifth Circuit.

Jan. 21, 1942.

Ed C. Brewer and Lester M. Sack, both of Clarksdale, Miss., for General Contract Purchase Corporation et al.

Semmes Luckett, J. L. Roberson, and Stovall Lowrey, all of Clarksdale, Miss., for Flora Armour et al.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for damages resulting in the death of one Paul Armour. The claim generally stated, was that while riding on a public road on his bicycle, Armour was negligently struck and killed by a motor vehicle, owned by defendant, General Contract Purchase Corporation, and driven by defendant Scott. The particular negligence

alleged was that he was then driving at an excessive rate of speed, to-wit, in excess of 60 miles per hour and visibility was greatly impaired by weather conditions, it was extremely cold, snow was falling, a high wind was blowing across the highway.

The defense was a denial, that Scott was in any way negligent, and specifically, that he was driving in excess of 60 miles per hour or at any excessive rate of speed and that visibility was greatly impaired by weather conditions as plaintiff had alleged. There was a further specific answer that defendant Scott was proceeding on the highway operating the automobile in a perfectly lawful and proper manner and that the acts and negligence of Armour in attempting, as he did, to cross the highway, were the sole proximate cause of his death and injury. In addition to filing an answer, defendants, alleging a prior employment of the firm of Roberson & Luckett by defendants, on an inquiry into whether the homicide was with gross or criminal negligence, moved[1] that they be not permitted to appear for plaintiffs against them in the suit.

On the hearing of the motion, Scott on examination by Mr. Lowery, was asked the following questions:

"Q. Mr. Scott, are you here objecting to Mr. Roberson helping me represent the widow and children? A. No, sir, I am just a witness.

"Q. You are not personally objecting? A. No, sir. I wouldn't have anything against you people personally."

But upon re-direct examination, he testified that the filing of the motion against Roberson and Luckett's representing plaintiff was done with his understanding and approval.

"Q. Were you not indignant about their calling you down there under those circumstances and didn't you protest to me? A. Well, I didn't feel very good about the matter because I felt more or less like they got me there to double-cross me or mess me up. After it happened I could see through it. I ought to have gotten an attorney to represent my company, so I went to Mr. Sacks about it and told him what happened.

"Q. I will ask you if it hasn't been the attitude of your employees or yourself all through this, that these attorneys were not properly representing the adverse interests in this case. A. Yes, sir."

The district judge on these questions and answers held that Scott had a right to object to Roberson and Luckett appearing in the case for the plaintiff but had waived his objection.

The case then went to trial before the court without a jury and counsel for plaintiffs took the position that the testimony Scott had given on the trial in the criminal cause in the justice court made him liable in the damage suit, and by vigorous cross-examination, undertook to show that Scott had changed his testimony for the civil trial. Further as shown by their brief[2] on file in this court, they contended that Scott was not only negligent but grossly so, indeed that "he was driving on the blind assumption that he was entitled to a clear road", and in fact, "driving his car at such a dangerous rate of speed as that he was in every sense of the term, grossly negligent." The district judge found that Scott was negligent but that Armour was much more negligent, in that he was riding an unlighted bicycle; he didn't look down the road to see what was coming before en-

---

[1] The motion filed on behalf of the two defendants, set out that Scott had employed Mr. Roberson, the senior member of Roberson and Luckett, to represent him in the justice court, and had been assured by Roberson that he was in no wise criminally responsible. For these services the firm of Roberson and Luckett were paid $50.00 by check of the General Contract Purchase Corporation; that asked by Luckett to come to their office, Scott was interviewed in that office by Mr. Lowery for the purpose of getting evidence for a civil suit to be filed on account of the accident and concluded with the suggestion that Roberson and Luckett should not be permitted to prosecute the suit.

[2] "It is perfectly clear that Scott, at the time of the accident, was violating the cardinal rules of the road, without the observance of which travel on the highways is unsafe and hazardous in the extreme. He was driving on the blind assumption that he was entitled to a clear road. And either he was driving at a rate of speed which did not permit him to avoid injury to persons and vehicles which came within the range of his vision, or he was not keeping an alert lookout for others using the road. He was, in fact, 'driving his car at a dangerous rate of speed when he was, figuratively speaking, blindfolded by weather conditions or by a failure to keep an alert lookout. He was, in every sense of the term, grossly negligent.' " Page 22 of the appellees' brief.

tering it; he had his coat up shielding his face from the wind; and figuring plaintiffs' full damages at $5,000, he reduced the recovery to $2,000, "on account of the very gross negligence of plaintiff's decedent."

Appellant is here insisting that the court erred in denying the motion to disqualify Roberson and Luckett, and in his findings and judgment for plaintiffs, and that the judgment must be reversed because of these errors. We agree with appellants. While, under Section 1002 of Mississippi Code of 1930,[3] simple negligence would not support a conviction for the killing by automobile which occurred in this case, proof that the negligence was gross would. Gregory v. State, 152 Miss. 133, 118 So. 906; Shows v. State, 175 Miss. 604, 168 So. 862; Turner v. State, 183 Miss. 658, 183 So. 522. In view of the fact that counsel for plaintiffs were insisting not merely that Scott was civilly negligent but that he was grossly so, and therefore criminally negligent, it would take the clearest kind of evidence of waiver to support a finding that their former client in the criminal proceeding was willing for them to fasten criminal liability on him in order to obtain a verdict against him for their new client and had waived his right to object to their doing so. There was no such evidence in the record. On the contrary, Scott positively testified that he had authorized the filing of the motion, that he felt that he had been badly treated and that he had at all times taken the position that these attorneys ought not to sue him in this case. The finding of the district judge that he had waived his right to object is unsupported by the evidence. His finding that Scott was negligent is, we think, equally without support. The sole evidence in the case as to the occurrence of the accident, is that of Scott, the driver of the car. It is positive and uncontradicted by the testimony of witnesses or by circumstances. It is credible and reasonable and fully acquits him of any negligence.

The statutes of Mississippi, Mississippi Laws of 1938, Chapter 200, Article 6, § 51 (b), provide, "where no special hazard exists the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful: (1) Twenty miles per hour in any business district; (2) twenty-five miles per hour in any resident district; (3) fifty-five miles per hour under [any] other conditions." The injury occurred in the country and though, in an effort to avoid the effect of the statute, plaintiffs charge Scott with driving 60 miles per hour, the uncontradicted proof is that he was driving between 40 and 45 miles an hour. The same uncontradicted proof establishes: that though it was dark, his lights were in good condition and lighted the road ahead of him; that while it was snowing the visibility was good for there was a wind blowing, the snow was dry, it did not pack or cake and did not at all obstruct his vision, and he was watching the road as he went; and finally that there was no sign or intimation on the highway of this small neighborhood or turn out road out of which the deceased came darting at 25 miles per hour, riding a bicycle without any light.[4] Scott testified, and no one contradicted him, that when he first saw deceased, he had come out of the side road and on to the pavement at a very rapid rate of speed, and that he did the best he could to swerve away from him and miss him but that deceased ran into and collided with his fender. Plaintiffs undertook by cross examination, to make Scott admit that he had changed his testimony from that given on the examining trial. But they could not and did not do so. The sum and substance of the testimony of the witnesses they offered to raise some contradiction was; that there was no substantial change; that, as shown by a statement offered in evidence which each of them signed, Scott's testimony had clearly shown that he did everything a reasonable man could do; that there were no eye witnesses to the accident; and that no testimony was given contrary to Scott's statement.

This evidence does not support, it rebuts the finding of the district judge: "that Scott was driving at a somewhat too

---

[3] Homicide—all other killings.—Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this chapter, shall be manslaughter.

[4] Section 110, Chapter 200, Article 15, Mississippi Law of 1938 provides: That every bicycle shall be equipped with a lamp on the front exhibiting a white light visible at a distance of 500 feet from the front, and a lamp on the rear exhibiting a red light visible at a distance of 500 feet to the rear.

fast rate of speed considering weather conditions and the visibility existing on the night in question; that the law put a duty on him to be on the alert at all times to examine the sides of the highway and any approaches to guard himself against any such happening as happened in this case; that he probably didn't see the deceased until almost the second of the collision, but if he had been sufficiently on the alert he could have seen him, in a sufficient amount of time to sound his horn and give him warning that he was approaching." It shows clearly that not the greater part, as the district judge found, but the whole of the responsibility for the collision rests on the deceased. For, coming rapidly, after dark, out of a sideroad onto a through highway at a speed of 25 miles per hour, not looking before he entered it but with his coat in front of his face, to protect it against the snow, so that he couldn't see the road ahead of him, his actions were the sole proximate cause of the collision. The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

HOLMES, Circuit Judge (dissenting).

I think the testimony in the record supports the findings below on the issues of waiver, negligence, and contributory negligence, and therefore dissent from the judgment of reversal.