**SPIVEY, Admr., Appellant,**

**v.**

**BENDER, Appellee.**

[Cite as *Spivey v. Bender* (1991), 77 Ohio App.3d 17.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–358.

Decided Aug. 30, 1991.

*George C. Rogers*, for appellant.

*David W. Stuckey*, for appellee.

ABOOD, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted appellee's motion to disqualify appellant's counsel. Appellant sets forth one assignment of error:

"The trial court erred in disqualifying plaintiffs [*sic*] counsel from representing the plaintiffs when defendant had expressly and with advice of counsel waived any objection and had expressly consented to his former counsels' [*sic*] representation of such plaintiffs and when based upon such waiver and consent plaintiffs [*sic*] counsel had entered into representation of plaintiffs and had performed substantial services in the matter."

The undisputed facts that are relevant to a determination of the issues raised by this appeal are as follows. On May 5, 1989, Audrey Bender was killed in an automobile accident while she was a passenger in a vehicle driven by her husband, Theodore H. Bender, Sr. ("Bender"). As a result of the accident, Bender was criminally charged with aggravated vehicular homicide and criminal damaging and endangering. The vehicular homicide charge was eventually dropped and Bender entered a plea of "no contest" and was found guilty of criminal damaging and endangering. In the criminal proceedings, Bender was represented by Rogers & Godbey Co., L.P.A. ("R. & G."). While the criminal case was pending, R. & G. advised Bender and his children of a potential civil suit for wrongful death that could be brought against him and referred Bender to independent counsel as to that matter. R. & G. concluded its attorney-client relationship with Bender on November 13, 1989 when they represented him at his sentencing on the criminal charge.

On November 15, 1989, after consulting with independent counsel, Bender executed a document entitled "Waiver of Rights and Obligations Arising Pursuant to Former Attorney–Client Relationship and Authorization to Disclose any and all Attorney–Client Communications, Documents, Work Product Arising prior to [*sic*] during and Subsequent to Such Relationship," in which he stated:

"I, Theodore H. Bender, Sr. of 2337 Dellwood Drive, Toledo, Ohio, in order to induce my former Counsel, the law-firm of Rogers [*sic*] Godbey Co., LPA and the attorney's [*sic*] and employees therein, to accept the representation of my children, Tamara Spivey, Teresa Kniffen and Theodore Bender, and the estate of my deceased wife, Audrey Bender, in a civil action in which I will be named defendant.

"I do hereby waive any and all rights, duties and obligations owed to me by the law-firm of Rogers & Godbey Co., LPA. [*sic*] it's [*sic*] Attorneys [*sic*] employees and agents which [*sic*] arising pursuant to the former attorney-client relationship that I had with such firm.

"I acknowledge that I have been informed that the firm Rogers & Godbey will refuse to represent my children and my deceased wife's estate due to a conflict of interest arising from such prior representation, unless I freely and voluntarily waive any rights of confidentiality and any other and all obligations and duties arising from such representation. I acknowledge that if the firm Rogers & Godbey Co., LPA is to fully and fairly represent my children and the estate of my deceased wife that it and its attorneys, employees and agents will have to use any and all information at their disposal, regardless of the time, place, method, circumstance or reason for

gathering such information and that use of such information and use of any other attorney-client work product may be contrary to my interests."

On June 12, 1990, R. & G. filed the complaint in this case on behalf of Tammy Spivey, as the administratrix of the estate of Audrey Bender and the personal representative of Audrey Bender's surviving mother and children, against Bender. (The complaint did not make a claim on behalf of Bender.) On August 24, 1990, Bender filed a motion to disqualify R. & G. as counsel for the plaintiff and on September 28, 1990, the trial court granted the motion. On October 12, 1990, appellant filed a motion for reconsideration and attached thereto an undated document entitled "Notification" and signed by Mark Robinson, which stated:

"I, Mark Robinson, an Attorney at Law, admitted to the practice of law, in the State of Ohio, do hereby state that I represent Theodore H. Bender, Sr., as personal counsel (not trial counsel) in the claims of his family members regarding the death of Audrey Bender. I further represent him in his dealings with his insurance carrier and the insurance carriers [sic] appointed trial counsel.

"I have asked Mr. Bender whether he desires to repudiate the Waiver of Rights Agreement that he signed November 15, 1990. He informs me that he affirms such agreement and that he has no desire to repudiate it. He is not opposing the filing of the motion filed by the insurance counsel since his insurer under the cooperation clause may have the right to file such motion without his approval. He does oppose the implication of fact, however, that he wishes to interfere with his family's selection of counsel and that he wishes to repudiate his Waiver since such implications of fact are false. He is not required to cooperate with false implications of fact."

On October 18, 1990, the trial court filed its judgment entry, finding that:

"Due to the fact that Plaintiff's counsel had previously represented defendant, it is important to avoid any appearance of impropriety. Defendants [sic] motion to disqualify Plaintiff's counsel is, therefore, granted. This is a Final Appealable Order, there being no just cause for delay regarding appeal."

It is from this judgment that appellant brings this appeal.

In her sole assignment of error, appellant contends that the trial court erred in disqualifying R. & G. from representing her in the wrongful death claim against her brother. In support, she argues that an attorney may represent a litigant in a suit against his former client upon the making of a knowing, intelligent and voluntary waiver or consent to do so by the former client.

Appellee responds that (1) a trial court has discretion to disqualify a law firm from representing an adverse party in a civil suit against the law firm's former client and such an order will not be disturbed absent an abuse of discretion; (2) there is a substantial relationship between the existing case and the prior representation, and disqualification is necessary to preserve the secrets and confidences of Bender; (3) disqualification is necessary in this case to avoid the appearance of impropriety; (4) consent cannot be given by the former client when the attorney intended, from the outset of the litigation involving his former client, to represent adverse interests upon completion of that representation; (5) DR 5–105(C) should be applied to preclude multiple representation where it is obvious that counsel cannot adequately represent both clients; and (6) waiver or consent must be obtained by Bender's insurer, which also has an interest, in order for appellant's counsel to continue. Appellee does not contend that any provisions of the Code of Professional Responsibility, other than DR 4–101 and DR 5–105(C), were violated or that there is any appearance of impropriety other than the appearance of representing conflicting interests of current or former clients.

Appellant replies that (1) a conflict of interest arising from *prior*, as opposed to *concurrent*, representation is waivable; (2) the waiver by Bender was express, knowing, voluntary and made while represented by independent counsel; (3) Bender's insurer need not consent since it had no attorney-client relationship with its insured's former lawyers; and (4) if the court finds that appellant's counsel should be removed due to the appearance of impropriety, despite the waiver, such finding necessarily carries with it the implication that a former client can *never* waive or consent to adverse representation.

While the Supreme Court exercises exclusive jurisdiction over admission to the practice of law and discipline of persons so admitted, a trial court retains the " 'authority and duty to see to the ethical conduct of attorneys in proceedings before it * * * [and] [u]pon proper grounds it can disqualify an attorney.' " *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 34, 501 N.E.2d 617, 620, quoting *Hahn v. Boeing Co.* (1980), 95 Wash.2d 28, 34, 621 P.2d 1263, 1266. As explained further in *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 259–260, 31 OBR 459, 462, 510 N.E.2d 379, 382:

"This includes the inherent authority of dismissal or disqualification from a case if an attorney cannot, or will not, comply with the Code of Professional Responsibility when representing a client. *Id.* [*Royal Indemn. Co., supra.* ] This power is distinct from the exclusive authority of the Supreme Court of Ohio over attorney disciplinary proceedings, and does not conflict with such power. *Id.* See, also, Section 5(B), Article IV of the Ohio Constitution and

Gov.Bar R. V; *Smith v. Kates* (1976), 46 Ohio St.2d 263, 75 O.O.2d 318, 348 N.E.2d 320; *Brotherhood of Ry. Carmen of the United States & Canada v. Delpro Co.* (D.Del.1982), 549 F.Supp. 780. Indeed we hasten to approve and encourage courts throughout this state in their efforts to halt unprofessional conduct and meet their responsibilities in reporting violations of the Code. See Canon 3B(3) of the Code of Judicial Conduct." See, also, Canons 1 and 3A(2) of the Code of Judicial Conduct; *Maple Hts. v. Redi Car Wash* (1988), 51 Ohio App.3d 60, 61, 554 N.E.2d 929, 931; *Josselson v. Josselson* (1988), 52 Ohio App.3d 60, 67, 557 N.E.2d 835, 844.

In ruling on a motion for disqualification:

"The court has broad discretion in determining whether counsel should be disqualified in ongoing litigation. *Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir.1975); *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 610 F.Supp. 1319, 1322 (D.Del.1985); *Sherrod v. Berry*, 589 F.Supp. 433, 436 (N.D.Ill. 1984). However, the law requires the discretion to be exercised wisely, and with due regard to lawyers' ethical standards. The issue arising from the application of these standards cannot be resolved in a vacuum, and the ethical rules should not be blindly applied without consideration of relative hardships. Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts. *Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 567 (S.D.N.Y.1987)." *Gould, Inc. v. Mitsui Mining & Smelting Co.* (N.D.Ohio 1990), 738 F.Supp. 1121, 1124.

In reviewing the case law, this court recognizes that:

" * * * disqualification is a drastic measure which should not be imposed unless absolutely necessary. * * * A delicate balance must be struck between two competing considerations: the prerogative of a party to proceed with counsel of its choice and the need to uphold ethical conduct in courts of law. *Panduit [Corp. v. All States Plastic Mfg. Co.* (1984) ], 744 F.2d [1564] at 1577; *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983)." *Id.* at 1126.

Disqualification, therefore, "should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.* (C.A.2, 1981), 653 F.2d 746, 748.

The issue for this court to determine is whether the trial court abused its discretion by finding that "[d]ue to the fact that Plaintiff's counsel had previously represented defendant, it is important to avoid any appearance of impropriety" and disqualifying appellant's counsel from representing appellant. When considering the underlying facts of this case, this court finds that the nonspecific language used by the trial court lends itself to two possible

meanings: (1) the impropriety referred to is the betrayal, in this lawsuit, of confidences and/or secrets gained by R. & G. during its previous representation of Bender or (2) the impropriety referred to is collusion or fraud in which Bender could provide the means to ensure or aid the establishment of his negligence.

As to confidences and secrets, DR 4–101(B) provides that a lawyer shall not reveal confidences or secrets of a client that were learned during the course of representation, or use them either to his or another's advantage or to the disadvantage of his client. This obligation "continues after the termination of his employment." EC 4–6. When a lawyer represents an interest adverse to that of his former client, " * * * the underlying concern is the *possibility,* or *appearance* of the possibility, that an attorney may have received confidential information during the prior representation * * * " which can subsequently be used in violation of DR 4–101(B). (Emphasis added.) *Trone v. Smith* (C.A.9, 1980), 621 F.2d 994, 999.

In response to this concern, the "substantial relationship" test was developed and provides that, in order to have his prior attorney disqualified from pending litigation,

" * * * 'the former client [must] show no more than that the matters embraced within the pending suit wherein his former attorney appears * * * are substantially related to the matters or cause of action where the attorney previously represented him, the former client.'" *United States v. Nabisco, Inc.* (E.D.N.Y.1987), 117 F.R.D. 40, 45, quoting *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.* (1953), 113 F.Supp. 265, 268–269; see, also, *Cinema 5, Ltd. v. Cinerama, Inc.* (C.A.2, 1976), 528 F.2d 1384.

Since, however, "[t]he obligation to protect confidences and secrets obviously does not preclude a lawyer from revealing information when his client consents after full disclosure * * * ", EC 4–2, there is

" * * * general agreement among the courts that the right of a former client to object to the attorney's subsequent representation of an adverse interest may be expressly or tacitly waived, and that effect will be given to such waiver where all the proper elements of the waiver doctrine are present." Annotation (1957), 52 A.L.R.2d, 1243, 1268, Section 9[a]; see, also, *Trust Corp. of Montana v. Piper Airport Corp.* (C.A.9, 1983), 701 F.2d 85, 87.

In a situation very similar to the one before this court, the Fifth Circuit, in *General Contract Purchase Corp. v. Armour* (C.A.5, 1942), 125 F.2d 147, was confronted with the appeal of a decision on a motion to disqualify the plaintiff's attorney in a wrongful death action brought against the individual whom the attorney had represented in the defense of the criminal case arising

out of the same automobile accident. Although the court held that the finding of the district judge that the former client had waived his right to object was unsupported by the evidence, it stated that clear evidence of waiver would support a finding that the former client in the criminal proceeding was willing to allow his former attorney to proceed against him in the civil action. *Id.* at 149.

■ Upon consideration of the undisputed facts as set forth above and the law, this court finds that, to the extent the language used by the trial court in its judgment entry means the appearance of betraying confidences or secrets, (1) a trial court has the authority and duty, in the exercise of its sound discretion, to disqualify an attorney who violates the Code of Professional Responsibility when such violation poses a significant risk of trial taint; (2) the present action against Bender involves matters substantially related to the matters involved in the criminal case in which R. & G. previously represented Bender; (3) it is a violation of DR 4–101(B) for an attorney to prosecute an action against his former client when the matters involved are substantially related to the matters or cause of action in which the lawyer previously represented his former client; (4) a former client may consent and/or waive adverse representation after full disclosure; (5) Bender, after full disclosure and after conferring with separate, independent counsel, knowingly, voluntarily and expressly consented to, waived and approved of the adverse representation by his former counsel, and reaffirmed his consent, waiver and approval after the motion to disqualify was filed; and (6) there is no evidence that Bender's consent and/or waiver is in any way invalid.

As to collusion or fraud, DR 7–102(A) provides that, in his representation of a client, a lawyer shall not conceal evidence or use, counsel, assist, create or participate in the creation of false evidence. By virtue of the interplay between Canon 9 and DR 7–102, a lawyer must also avoid the appearance of fraud or collusion.

In this case, the only conceivable appearance of fraud or collusion that could arise would be in Bender appearing to "collect the insurance benefits for his own negligence." *Shearer v. Shearer* (1985), 18 Ohio St.3d 94, 98, 18 OBR 129, 480 N.E.2d 388.[1] That this situation is possible at all is a result of the

---

1. Bender may not be able to *directly* share in the proceeds of this wrongful death action. R.C. 2125.01 through R.C. 2125.03 provides the exclusive means for recovery and distribution of wrongful death proceeds. The proceeds arising from the prosecution of a wrongful death action are not assets of the decedent's estate. *United States Fid. & Guar. Co. v. Decker* (1930), 122 Ohio St. 285, 287, 171 N.E. 333, 334. They are distributed directly to the beneficiaries listed in the wrongful death statute. R.C. 2125.03(A). Prior to the enactment of R.C. 2315.19(A) (the comparative negligence statute), under the preexisting contributory negligence rule, a beneficiary guilty of contributory negligence could not share in the

state of the law in Ohio which permits intrafamilial lawsuits, particularly wrongful death actions. *Prem v. Cox* (1983), 2 Ohio St.3d 149, 2 OBR 694, 443 N.E.2d 511; *Shearer, supra.* In abolishing immunity between spouses, however, the Supreme Court explained that:

" * * * the prevention of fraudulent and collusive suits does not require that we deny legitimate claims. A husband and wife who have suffered an unfortunate accident are no more likely to collaborate to defraud an insurance company than a host, anxious to provide for the compensation of a guest injured in the same way." *Shearer, supra,* 18 Ohio St.3d at 98, 18 OBR at 133, 480 N.E.2d at 393. See, also, *Primes v. Tyler* (1975), 43 Ohio St.2d 195, 200, 72 O.O.2d 112, 115, 331 N.E.2d 723, 727.

"Fraud and collusion are unlikely to occur when one spouse is dead and the action is brought by the legal representative of that person's estate. * * * It is not realistic to maintain that insurance companies are tactically disadvantaged in this situation." *Prem, supra,* 2 Ohio St.3d at 151, 2 OBR at 696, 443 N.E.2d at 514.

The same explanation was given by the Supreme Court of Ohio in abolishing the doctrine of parental immunity. *Kirchner v. Crystal* (1984), 15 Ohio St.3d 326, 329, 15 OBR 452, 454–55, 474 N.E.2d 275, 278.

Upon consideration of the undisputed facts as set forth above and the law, this court finds that, to the extent that the language used by the trial court in its judgment entry means the appearance of fraud or collusion, (1) a trial court has the authority and duty, in the exercise of its sound discretion, to disqualify an attorney who fails to avoid the appearance of fraud or collusion only when a significant risk of trial taint is posed; (2) R. & G. is prosecuting a wrongful death action against its former client, the spouse of the decedent; (3) there is no inherent appearance of fraud or collusion in the prosecution of a wrongful death action against the spouse of the decedent, *Prem, supra,* and *Shearer, supra;* and (4) there has been no showing that, if R. & G. continues in its representation of the plaintiff in this case, there would exist an appearance of fraud or collusion that would pose a significant risk of trial taint.

---

distribution of wrongful proceeds. *Wolf v. Lake Erie & W.R. Co.* (1896), 55 Ohio St. 517, 45 N.E. 708, paragraphs two and three of the syllabus. It has not been decided in Ohio whether and to what extent R.C. 2315.19(A) would operate to defeat a claim for a share of the distribution of proceeds pursuant to R.C. 2125.03 by a defendant spouse in a wrongful death action where his negligence is not fully responsible for the death. It is clear, however, that Bender may indirectly benefit from recovery by his children. *Shinaver v. Szymanski* (1984), 14 Ohio St.3d 51, 56, 14 OBR 446, 450, 471 N.E.2d 477, 482.

In accordance with the foregoing, this court finds further that the trial court abused its discretion in disqualifying appellant's counsel, and appellant's sole assignment of error is well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas disqualifying appellant's counsel is reversed. This case is remanded to said court for further proceedings not inconsistent with this opinion. Costs assessed against appellee.

This court finds further that appellant's motion to strike filed in this court on June 27, 1991, is hereby rendered moot and is denied.

*Judgment reversed.*

GLASSER and SHERCK, JJ., concur.