OPINION
{¶ 1} Plaintiffs/defendants-appellants, Dominic Presutti, Jr. and Clara Presutti, appeal from the judgment of the Belmont County Court of Common Pleas declaring the ownership of 33 shares of stock in the Ohio Fireworks Manufacturing Display Company, Inc.
 {¶ 2} The present case arises out of a controversy surrounding the ownership of stock in a family-owned corporation, Ohio Fireworks Manufacturing Display Company, Inc. ("Ohio Fireworks"). Ohio Fireworks was incorporated in 1934. It is helpful in understanding this case to identify the family members and their relationship to one another. Dominick Presutti, Sr. ("Dom Sr.") and Theresa Presutti ("Theresa") were married and had two sons, Dominick Presutti, Jr. ("Dom Jr.") and Veto Presutti ("Veto"). Dom Jr. married Clara Presutti ("Clara") and they had two sons, Michael and Ron. Veto married Barbara Presutti ("Barbara") and they had three children, Roger, Delphine and Barbara Ann.
 {¶ 3} In 1949, Dom Sr. owned ten shares of stock in Ohio Fireworks and Theresa owned one share. Dom Sr. issued ten shares each to Dom Jr. and Veto. Several years later Dom Sr. transferred his ten shares to Theresa, giving her eleven shares total. One share each was then issued to Clara and to Barbara. Thus, Ohio Fireworks had 33 shares of outstanding stock. Veto died on September 24, 2000. Following Veto's death, a dispute arose surrounding the ownership of the stock. Dom Jr. and Clara claim that the two Presutti families, Dom Jr.'s and Veto's, own equal amounts of the stock. Veto's heirs claim they own 17 shares and Dom Jr.'s family owns 16 shares. The controversy centers around whether Theresa transferred one share to Roger during a 1968 shareholders' meeting or whether all of her shares passed equally to Dom Jr. and Veto by way of her will when she died in 1982.
 {¶ 4} On February 8, 2001, Dom Jr., Clara, and Ohio Fireworks filed a complaint against defendants/plaintiffs-appellees, Attorney Richard L. Lancione (Atty. Lancione), as the executor of Veto's estate, and against Delphine, Barbara Ann and Roger, Veto's heirs (Case No. 01 CV 59). The complaint alleged among other things, that Atty. Lancione had taken certain actions with Ohio Fireworks, purportedly on behalf of Veto's estate, which he was not authorized to take and that the named defendants took control of the corporate records and altered them without authority to do so. The complaint sought a declaratory judgment establishing the rights of all parties involved and requested damages. The next day, Atty. Lancione, as executor of Veto's estate, and Delphine and Barbara Ann, as Roger's transferees and assignees, filed a complaint against Dom Jr., individually and as director of Ohio Fireworks, and Michael (Case No. 01 CV 64). This complaint alleged Dom Jr. failed to issue or replace certain stock certificates, that Michael had in his possession money belonging to Ohio Fireworks, and that Dom Jr. was taking unauthorized actions on behalf of Ohio Fireworks. The plaintiffs requested that the court order Dom Jr. to issue certain stock certificates and enjoin Dom Jr. from taking further action on Ohio Fireworks' behalf, among other relief.
 {¶ 5} The trial court consolidated the two cases. The court held a trial on April 6, 2001. In its April 25, 2001 judgment entry, the court found the following: A total of 33 shares of Ohio Fireworks stock were issued. Roger was the owner of the one disputed share originally owned by Theresa. Roger sold all of his interests in five shares equally to Delphine and Barbara Ann. Delphine and Barbara Ann now own eight and one half shares each. Dom Jr. owns 15 shares. Clara owns one share. The court ordered Dom Jr., as Ohio Fireworks' director, to issue stock certificates to Delphine and Barbara Ann reflecting their eight and one half shares each. Dom Jr. and Clara filed a notice of appeal on May 24, 2001. Upon Dom Jr.'s request, the court issued findings of fact and conclusions of law on July 18, 2001.
 {¶ 6} Appellants, Dom Jr. and Clara, raise four assignments of error. Their first three assignments of error are closely related; thus we will discuss them together. The first, second and third assignments of error state:
 {¶ 7} "THe trial court abused its discretion when it refused to disqualify as plaintiff's counsel, Attorney Richard Lancione who was executor for the estate of Veto Presutti, a deceased corporate shareholder, and corporate legal counsel for defendant, Ohio Fireworks Corporation, and who testified as a principal witness for his clients in a lawsuit seeking shareholder control of the family corporation."
 {¶ 8} "The trial court erred when it failed to conduct a separate evidentiary hearing on the motion for disqualification of Attorney Lancione as counsel in the pending proceedings."
 {¶ 9} "The trial court abused its discretion when it failed to disqualify Attorney Lancione and his firm as counsel for the subject corporate entity whose controlling shares was the issue dispute between the majority shareholders, brothers in this family owned corporation, one of which Mr. Lancione owed a fiduciary duty as shareholder and the other of which was now deceased and to whose estate Mr. Lancione had been appointed the executor."
 {¶ 10} Appellants argue that the trial court abused its discretion in failing to disqualify Atty. Lancione from representing appellees since he was a witness in the case. Appellants contend that attorney Lancione does not qualify for any of the exceptions set out in DR 5-101(B), which permit an attorney to both testify in a trial and represent one of the parties. Next, appellants argue the court should have disqualified attorney Lancione because he also represented Ohio Fireworks, thus creating a conflict of interest. They allege attorney Lancione, as corporate counsel for Ohio Fireworks, owes a fiduciary duty to them as well as to appellees. Additionally, appellants assert the trial court erred in failing to conduct an evidentiary hearing on their motion to disqualify attorney Lancione.
 {¶ 11} When determining whether or not to disqualify counsel, the trial court has broad discretion. Spivey v. Bender (1991),77 Ohio App.3d 17, 22. Thus, this court will not reverse the trial court's ruling absent an abuse of this discretion. Abuse of discretion connotes more than an error of law or judgment, but that implies the trial court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1985), 5 Ohio St.3d 217, 219.
 {¶ 12} First, we must determine whether the trial court erred in failing to conduct a full evidentiary hearing on appellants' motion. Appellants did not actually move to disqualify attorney Lancione, they merely requested that he not be permitted to question witnesses when he himself was going to be called as a witness. (Tr. 6). Appellants suggested that attorney Lancione's co-counsel proceed. (Tr. 7-8). The court listened to the arguments of both sides and asked for any law appellants had on the subject. Appellants had no law to present and gave no indication that they had any sort of evidence or witnesses to present in support of their motion. Accordingly, the trial court did not err in failing to conduct a full evidentiary hearing.
 {¶ 13} In determining whether the trial court abused its discretion, we are faced with two separate instances to consider. The first instance involves attorney Lancione's testimony and whether he should have been permitted both to testify and to represent his clients in the same trial. The second instance concerns whether attorney Lancione had a conflict of interest in acting as the executor of Veto's estate and representing appellees when he has previously acted as Ohio Fireworks' counsel.
 {¶ 14} First, we will address attorney Lancione's testimony. InMentor Lagoons, Inc. v. Rubin (1987), 31 Ohio St.3d 256, the Ohio Supreme Court set out the procedure trial courts should take when faced with a situation where one of the parties' attorneys testifies at trial. The court stated:
 {¶ 15} "[W]hen an attorney representing a litigant in a pending case requests permission or is called to testify in that case, the court shall first determine the admissibility of the attorney's testimony without reference to DR 5-102(A). If the court finds that the testimony is admissible, then that attorney, opposing counsel, or the court sua sponte, may make a motion requesting the attorney to withdraw voluntarily or be disqualified by the court from further representation in the case. The court must then consider whether any of the exceptions to DR 5-102 are applicable and, thus, whether the attorney may testify and continue to provide representation. In making these determinations, the court is not deciding whether a Disciplinary Rule will be violated, but rather preventing a potential violation of the Code of Professional Responsibility." Id. at 260.
 {¶ 16} The exceptions to DR 5-102, which are set out in DR 5-101(B), state:
 {¶ 17} "A lawyer shall not accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or a lawyer in the firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the firm may testify:
 {¶ 18} "(1) If the testimony will relate solely to an uncontested matter.
 {¶ 19} "(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
 {¶ 20} "(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.
 {¶ 21} "(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case."
 {¶ 22} With respect to the case sub judice, appellants raised an objection at the beginning of the trial as to Atty. Lancione representing appellees when they were going to call him as a witness. It is undisputed that Atty. Lancione's testimony regarding the corporate structure, the alteration of corporate records, his participation in the preparation of documents, and his own acts as both counsel and fiduciary to Veto's estate are all relevant to the issues before the court. Thus, the testimony of attorney Lancione was admissible.
 {¶ 23} The only relevant DR 5-101(B) exception is number four, disqualification would cause a substantial hardship on appellees. In response to appellants' request that attorney Lancione not participate in the trial, attorney Lancione stated that for him to withdraw would be a hardship on appellees. (Tr. 7). He also stated that he discussed the matter with appellees and they were adamant that he handle their case. (Tr. 7). We should note that appellants were aware that attorney Lancione's firm was representing appellees since February 9, 2001 when the firm of Lancione, Davis Lloyd filed the complaint against them on behalf of appellee. The case did not proceed to trial until April 6, 2001. Appellants did not object to attorney Lancione's representation of appellees until the case was about to proceed. (Tr. 6). When they did object, appellants stated that they only objected to attorney Lancione representing appellees, not his entire firm. Thus, they contended that to disqualify attorney Lancione would not be a substantial hardship on appellees because another attorney from his firm was present at trial as co-counsel and could represent appellees. What appellants failed to consider however is that if the trial court disqualified attorney Lancione, it would have had to disqualify his entire firm, thus the case could not possibly proceed to trial that day or any time soon. Furthermore, both counsel requested that the trial court issue its decision within a week to ten days because time was of the essence in this case. (Tr. 211-12). Ohio Fireworks generally operated from April until September and closed for the winter months. Thus, the parties involved were anxious to resolve this case because the fireworks season was upon them.
 {¶ 24} Additionally, "[i]f, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client." DR 5-102(B). Since it was appellants and not appellees who called attorney Lancione to testify, attorney Lancione may not have learned that appellees were planning on calling him as a witness until after he undertook employment on appellees' behalf. Thus, his continued representation was proper so long as his testimony was not prejudicial to his clients, which it was not. Hence, the trial court did not abuse its discretion in allowing attorney Lancione to both testify and represent appellees.
 {¶ 25} Next, we must consider whether the trial court should have disqualified Atty. Lancione based on a conflict of interest in acting as the executor of Veto's estate and representing appellees when he has previously acted as Ohio Fireworks' counsel. An appellate court will not consider an error which the complaining party did not object to at a time when such error could have been avoided or corrected by the trial court.Lefort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123. Appellants never raised an objection regarding a conflict of interest as to Atty. Lancione representing appellees. Appellants' only objection was to attorney Lancione questioning the witnesses when he himself was to be called as a witness. (Tr. 6). Appellants even specifically suggested that another lawyer from attorney Lancione's firm handle the case and stated they were not requesting that attorney Lancione's firm be disqualified. (Tr. 8). Hence, since appellants failed to raise this issue before the trial court, we will not consider it on appeal.
 {¶ 26} Accordingly, appellants' first three assignments of error are without merit.
 {¶ 27} Appellants' fourth assignment of error states:
 {¶ 28} "The decision of the trial court is against the manifest weight of the evidence presented at trial."
 {¶ 29} Appellants argue that the trial court's decision is against the manifest weight of the evidence. They claim the evidence demonstrated that Theresa never transferred one share of stock to Roger. Appellants point out that Roger was not in possession of a stock certificate. They also note that the minutes of the meeting at which the alleged transfer took place do not make any reference to a stock transfer. Additionally, appellants assert that if Theresa did transfer the share to Roger in 1968, her probate estate would not have listed the share as an asset and Dom Jr. and Veto would not have signed off on the final accounting of the estate. Appellants also contend that the testimony demonstrated that Ohio Fireworks was run on a 50/50 basis between Dom Jr. and Veto. Thus, they contend the ownership interests in the company were also divided on a 50/50 basis between Dom Jr.'s family and Veto's family. Finally, appellants contend that Roger could not have owned the contested share because the contested share, along with the one other uncontested share that he owned, gave him an interest in Ohio Fireworks of approximately six percent. According to R.C. 3743.70, if a convicted felon owns a five percent or greater interest in a fireworks company, the company cannot receive the license necessary to sell/manufacture fireworks. Therefore, appellants contend that Roger could not have owned the disputed share from his grandmother (along with the undisputed one from his mother) without jeopardizing Ohio Fireworks' license.
 {¶ 30} Our standard of review has been set forth by the Ohio Supreme Court in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77:
 {¶ 31} "`Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' * * * We believe that an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." Id. at 80, quoting C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279.
 {¶ 32} Additionally, "[t]he trial court is entitled to make its own determination as to the weight of the evidence and, more important, credibility of the witnesses because it is in the best position to observe the witnesses' gestures and voice inflections." Rogers v. Hill
(1998), 124 Ohio App.3d 468, 470.
 {¶ 33} The parties agree that 33 shares of stock in Ohio Fireworks exist. The only issue is who owns the odd share. In other words: Did Theresa give the share to Roger in 1968 or did it pass via Theresa's will, half to Dom Jr. and half to Veto, in 1982?
 {¶ 34} The trial court made the following findings. In 1949, Dom Sr. owned ten shares of Ohio Fireworks stock and his wife, Theresa, owned one share. Dom Sr. issued ten shares to both of his children, Dom Jr. and Veto. At a special meeting on December 29, 1953, Dom Sr. transferred his ten shares to Theresa. Additionally, at that meeting, Dom Sr. issued one share to Clara, Dom Jr.'s wife, and one share to Barbara, Veto's wife. Thus, 33 shares were in existence. This much the parties do not dispute. The parties also do not dispute that following Barbara's death, her estate shows her one share was transferred to Roger. There is no corporate record of this transfer.
 {¶ 35} The dispute arose following Veto's death on September 24, 2000. In his will, Veto bequeathed his shares to his children as follows: six to Delphine, six to Barbara Ann, and three to Roger. Roger then sold all of his shares to his sisters, allegedly five shares total. Thus, appellees contend they own 17 shares total (six to Delphine from Veto, six to Barbara Ann from Veto, and five from Roger to Delphine and Barbara Ann). Appellants contend that they and appellees each own 16½ shares (alleging that Theresa's 11 shares were transferred via her probate estate five and one-half to Dom Jr. and five and one-half to Veto).
 {¶ 36} The Ohio Fireworks' stock ledger indicates that on July 15, 1968, Theresa transferred ten of her shares to Veto and Dom Jr., and one to Roger. (Plaintiff's Exhibit C). There are no records of any stock certificates.
 {¶ 37} Theresa died testate on January 17, 1982. Theresa's will does not specifically make reference to shares of stock in Ohio Fireworks. Her will provides, "All my property, real and personal of every kind and description, wheresoever situate which I own or have the right to dispose of at the time of my decease, I give, bequeath and devise to my children, Veto Presutti and Dominic Presutti, Jr., equally, share and share alike, absolutely in fee simple." (Defendant's Exhibit 1). In the probate court records, the entry approving and settling Theresa's accounts shows that Theresa's shares of stock were divided five and one-half to Dom Jr. and five and one-half to Veto. Both Dom Jr. and Veto signed the entry as executors.
 {¶ 38} The court determined that Theresa transferred her shares of stock as per the corporate stock ledger on July 15, 1968. Thus, the court concluded that Theresa could not devise the stock in her will since she did not own the stock when her will was written in February 1969. Additionally, in her will, Theresa did not specifically refer to the stock. The court noted that record transfers as shown in the corporate minute books and stock binders are prima facie evidence of the facts shown therein. Citing, R.C. 1701.92. Accordingly, the court concluded that appellants failed to demonstrate that the transfers in the stock ledger were not genuine.
 {¶ 39} The evidence presented at trial supports the trial court's determinations.
 {¶ 40} Roger testified that Theresa gave him one share of her stock in July 1968 at a shareholders meeting. (Tr. 11, 16). The corporate stock ledger corroborates Roger's testimony. The ledger clearly indicates that on July 15, 1968, Theresa transferred one of her shares of stock to Roger and her other ten shares to Dom Jr. and Veto. (Plaintiff's Exhibit C). Roger testified he never exercised his right to vote his shares of stock. However, Dom Jr.'s testimony indicates that he and Veto made all corporate decisions. There is no indication that the other minority shareholders (Barbara and Clara) ever voted their shares either. Thus, Roger's lack of voting does not indicate lack of stock ownership. Although Roger insisted the stock transfer occurred at the July 1968 meeting, he was unable to explain why the corporate minutes failed to make any reference to his receipt of his grandmother's share of stock. During cross-examination, Roger denied receipt or possession of any stock certificate or any other physical manifestation of his ownership of this particular share of his grandmother's stock in the family corporation. However, it is important to note that Dom Jr. has no stock certificate evidencing the stock he claimed to inherit from Theresa. (Tr. 101). In fact, Dom Jr. stated that the company did not issue stock certificates. (Tr. 77-78, 101). Hence, a stock certificate is not essential to prove stock ownership.
 {¶ 41} Roger also testified he is a convicted felon. (Tr. 20-21). R.C. 3743.70, prohibits any fireworks manufacturer from obtaining a license with the State of Ohio when a convicted felon owns five percent or more of the fireworks company. Therefore, Ohio Fireworks would have been denied its license so long as Roger held five percent or more of the corporation's stock. However, Dom Jr. testified that he and Veto never listed Roger's name on the license application. (Tr. 65-67).
 {¶ 42} Roger's testimony is further corroborated by his sisters' testimony. Barbara Ann testified that after Veto passed away, Michael called her to inquire about her giving him a share of her stock because he recognized that Veto's side of the family now owned a greater interest in the company than Dom Jr.'s side. (Tr. 42). Barbara Ann and Delphine both testified that everyone involved in the company knew about Roger owning the disputed share of stock. (Tr. 173, 199). Delphine testified that Dom Jr. knew of Roger's ownership, as was evidence by his efforts to purchase Roger's shares. (Tr. 173).
 {¶ 43} On the other hand, Dom Jr.'s testimony contradicts that of the other witnesses. Dom Jr. testified through Theresa's estate her 11 shares of stock were transferred, five and one-half to him and five and one-half to Veto. (Tr. 56-57). Dom Jr.'s testimony is corroborated by the receipts and disbursements attached to the final accounting of Theresa's estate. (Defendant's Exhibit 1). The final accounting is signed by both Dom Jr. and Veto. Dom Jr. further testified the records kept by Ohio Fireworks were not accurate. (Tr. 65). Dom Jr.'s testimony consistently emphasized that he and Veto always operated Ohio Fireworks jointly and shared everything (loans, profits, debts) equally.
 {¶ 44} Attorney Lancione testified that he has served as corporate counsel for Ohio Fireworks at various times over the years. (Tr. 117). He refuted Dom Jr.'s testimony that Ohio Fireworks was always run on a 50/50 basis between Dom Jr. and Veto. (Tr. 118). Atty. Lancione also contradicted Michael's testimony in which Michael testified Atty. Lancione told him that he was surprised to find records indicating the ownership was not 50/50. (Tr. 118, 134). Next, attorney Lancione testified that while the corporate documents were in his possession, no alterations were made. (Tr. 119). Finally, attorney Lancione testified that he and Michael had a phone conversation in which Michael stated that he wanted to buy Roger's stock because he knew Roger had the stock that gave Veto's family more than one-half ownership of Ohio Fireworks. (Tr. 126). Michael's testimony directly conflicts with that of attorney Lancione. Michael testified although he and attorney Lancione did discuss Roger's stock, he was only concerned with transferring the stock out of Roger's name so Ohio Fireworks would not have any problems renewing its license. (Tr. 132-33).
 {¶ 45} Importantly, the evidence also established that Theresa's 1969 will was her second will. Her first will was dated May 18, 1956 (which preceded the alleged July 15, 1968 stock transfer). In her 1956 will, Theresa specifically states: "If my said husband, Domenico Presutti, shall not survive me, I give, bequeath and devise to my children, Domenic Presutti, Jr., and Veto Presutti, all fireworks equipment, fireworks plant, trucks and other stock in trade and merchandise on hand, and all my stock in the Ohio Fireworks Manufacturing and Display Company, it being my intention to give, bequeath and devise to my children, equally, share and share alike, all my interest in the Ohio Fireworks Manufacturing and Display Company." (Plaintiff's Exhibit L). However, Theresa's 1969 will (which was written after the alleged July 15, 1968 stock transfer) does not specifically mention the stock, but only states: "All my property * * * which I own * * * to my children * * * equally." (Defendant's Exhibit 1). Since Theresa omitted the specific reference to the Ohio Fireworks stock in her 1969 will, this lends further support to the trial court's determination that she transferred the stock in 1968.
 {¶ 46} Although corporate books are prima facie evidence of the distribution of shares in the corporation in absence of certificates, the evidence presented at trial may overcome this presumption. R.C. 1701.37(B);Wick v. Youngstown Sheet Tube Co. (1932), 46 Ohio App. 253. Since no stock certificates were issued, the corporate share ledger provided the trial court with prima facie evidence that Theresa transferred one share of stock to Roger in 1968. Though some evidence presented at trial supports appellants' contentions, competent, credible evidence exists to support the trial court's findings of fact and conclusions of law. An appellate court cannot substitute its judgment for that of the trial court when this exists. The trial court was in the best position to evaluate the witnesses' credibility and give their testimony the appropriate weight. Because competent, credible evidence exists to support the trial court's decision, appellants' fourth assignment of error is without merit.
 {¶ 47} For the reasons stated above, the decision of the trial court is hereby affirmed.
Vukovich, J., concurs in judgment and opinion; also concurring separately; see concurring opinion.
Waite, J., concurs in both opinions.