JACKSON, Appellant,

v.

BELLOMY et al., Appellees.

[Cite as *Jackson v. Bellomy* (1995), 105 Ohio App.3d 341.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE11–1683.

Decided July 11, 1995.

*Michael P. Jackson,* for appellant Helene D. Jackson.

*Fagin & Fagin, Norman Fagin* and *Marc Fagin,* for appellees Bellomy et al.

*Kagay, Albert & Diehl* and *Daniel Bringardner,* for appellee James A. Griffin.

---

HOLMES, Judge.

The history of this case is a rather lengthy and tedious one rent with a multitude of litigious moves and countermoves by both parties. However, the only issue presently before this court upon appeal is that of whether the removal of Michael P. Jackson, plaintiff's legal counsel, was an abuse of discretion on the part of the trial court. Mr. Jackson is an attorney-at-law, and the plaintiff in this matter is Helene D. Jackson, the wife of Michael P. Jackson. Mrs. Jackson owns property located at 1249 Linwood Avenue in Columbus, Ohio. Mr. and Mrs. Jackson both live at the Linwood Avenue property, and Mr. Jackson conducts his legal practice out of the residence. Differences and altercations arose between the Jacksons and their immediately adjoining neighbors, Mr. and Mrs. Craig Bellomy, defendants and third-party plaintiffs herein, concerning the location of the Bellomys' garage, which the Jacksons claimed was encroaching upon their property. The plaintiff, Mrs. Jackson, brought this action in order to remove the alleged encroachment. The defendants answered and counterclaimed against the plaintiff based upon alleged acts of her husband in a property line scuffle between Mr. Jackson and Mr. Bellomy. The defendants also impleaded the Roman Catholic Diocese of Columbus as the common grantor of these involved properties. The diocese counterclaimed against plaintiff.

Many motions have been filed by all parties, but the only significant motion involved here was the motion filed by the third-party defendant, James A. Griffin, Bishop of the Roman Catholic Diocese of Columbus, to disqualify Michael P. Jackson as legal counsel for the plaintiff, Mrs. Jackson. The level of the emotions running throughout this proceeding is clearly evident, not only by the multitudinous filings in the case, but also by the associated actions of the counsel, such as plaintiff's counsel filing an affidavit of disqualification in the Ohio Supreme Court, seeking a disqualification of the trial judge who had entered the disqualification order of Mr. Jackson. Disqualification of the trial judge was reviewed and denied by the Chief Justice. Also, the emotional level of this proceeding is evidenced by correspondence from third-party defendants' counsel directed to the Office of Disciplinary Counsel of the Ohio Supreme Court complaining that Mr. Jackson, in continuing to represent Mrs. Jackson, knew of the possibility that he may be a witness on behalf of the plaintiff, or called by the opposing parties as a witness, and therefore violated the Disciplinary Rules cited below. The Office of Disciplinary Counsel, after consideration of the complaints and the responses thereto, as submitted by Mr. Jackson, determined that "disciplinary action is not warranted against Attorney Jackson. * * * We did

not find the matter about which you complained to be in violation of the Code * * *." There was also correspondence from Mr. Jackson, directed to Disciplinary Counsel, complaining that opposing counsel had somehow violated the Disciplinary Rules by sending correspondence directly to Mrs. Jackson, his client.

The third-party defendant, in support of its motion to disqualify Mr. Jackson as legal counsel for the plaintiff, argued that Mr. Jackson's continuance as legal counsel would be violative of both DR 5–102(A) and 5–102(B).

DR 5–102(A) reads as follows:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4)."

DR 5–102(B) reads as follows:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

The third-party defendant argued before the trial court, and again before this court, that:

"The testimony clearly showed that Mr. Jackson ought to be called as a witness on behalf of his client, as that would be necessary if Plaintiff–Appellant were to attempt to refute significant disputed testimony regarding discussions or incidents concerning the boundary line. The testimony, exhibits and pleadings fully support a need for disqualification to avoid a violation of DR 5–102(A).

"The testimony, exhibits and pleadings also fully support a need for disqualification to avoid a violation of DR 5–102(B), because it is obvious that Mr. Jackson may (and will) be called as a witness other than on behalf of his client and that it is apparent that his testimony is or may be prejudicial to his client."

The trial court ultimately decided the motion to disqualify in favor of the movant third-party defendant, stating in its opinion that in doing so it was not determining whether an attorney has committed a breach of legal ethics, but was acting pursuant to the trial court's "inherent power to regulate the practice before it and protect the integrity of its proceedings which includes the authority and duty to see to the ethical conduct of attorneys in proceedings," citing *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617. And, in so acting, the court stated: "This Court has wide discretion in the

exercise of its duty to protect the integrity of the proceedings before it, and may look to the disciplinary rules for guidance."

The trial court found that DR 5–101(B) did not provide a basis for the disqualification of Mr. Jackson as plaintiff's legal counsel in that it determined the facts would show that "Mr. Jackson, prior to accepting employment, did not know or did not believe it was obvious that he ought to be called as a witness in this case." However, the trial court held that there was basis apparent here for the disqualification of Mr. Jackson, pursuant to DR 5–102(A) and (B), based upon the fact that Mr. Jackson was, after employment as legal counsel, amply aware of all of the relevant facts concerning the real estate and its purchase, the mortgage loans that were obtained on the property, the property description and its boundaries, knowledge as to the altercation between himself and Mr. Bellomy, the defendant, and all matters concerning the related suits and cross-suits of the parties. Further, the court noted that Mr. Jackson had listed himself on the plaintiff's "initial disclosure of witnesses," pursuant to Loc.R. 43.01, and, additionally, it was very likely that Mr. Jackson would be called as a witness by the third-party defendant, and that he had been listed in this party's amended initial disclosure of witnesses. In this regard, the trial court stated: "Counsel for the Third–Party Defendant in this case provided ample evidence at the hearing to exhibit the potentially and foreseeable adverse interests between the Jacksons sufficient to disqualify Mr. Jackson from representing his wife." In support of this conclusion, the trial court restated Mr. Jackson's knowledge of the property acquisition, its financing, negotiations with the Catholic Diocese, Mr. Jackson's scuffle with his neighbor, etc., and the court then stated:

"It appears to this Court that Mr. Jackson's disqualification is justified under the foregoing circumstances. Clearly, Mr. Jackson's proposed testimony will be prejudicial to Mrs. Jackson. * * *

" 'Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate.' Ethical Consideration 5–10. Unfortunately, Mr. Jackson fails to appreciate the prospect of adverse interests between him and his spouse."

It should be pointed out that Mrs. Jackson appeared at the hearing concerning the disqualification of Mr. Jackson as her legal counsel, and, among other statements made to the court, she stated: "I want him as my attorney. I trust him totally, more than anyone else I know. He has my interests at heart."

The trial court, in its decision, correctly stated that in determining whether an attorney can continue to represent his client, the trial court is not deciding whether a violation of the Disciplinary Rules would have occurred. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510

N.E.2d 379. The trial court was also correct in stating that a trial court has the inherent power to regulate the practice before it and protect the integrity of its proceedings, which includes the authority and duty to see to the ethical conduct of attorneys in proceedings. *Royal Indemn. Co., supra.* This inherent power of the trial court definitely exists in a case involving counsel's ethical conduct, as was present in *Royal Indemn. Co.,* where the trial court revoked the *pro hac vice* admission of an attorney who had engaged in truly egregious misconduct, involving deceit with respect to counsel's intentional nondisclosure of certain discoverable property. This inherent power of the trial court also extends to situations where the question is not egregious misconduct of counsel but ethical considerations such as involved in *Mentor Lagoons* and the instant matter, which involves questions of whether counsel must withdraw when counsel will, or should, testify on behalf of the client, or will be called by the opposition to testify in the matter. *Mentor Lagoons* established the basic law which must be followed in this case. First, *Mentor Lagoons* generally held, by way of the first paragraph of the syllabus, that:

"DR 5–102(A) does not render an attorney incompetent to testify as a witness in a proceeding in which he is representing a litigant. When an attorney seeks to testify, his employment as counsel goes to the weight, not the competency, of his testimony."

Paragraph two of the syllabus of *Mentor Lagoons* states the procedure to be followed if legal counsel wishes to testify on behalf of his client, or is called as a witness by the opposing party:

"When an attorney representing a litigant in a pending case requests permission or is called to testify in that case, the court shall first determine the admissibility of the attorney's testimony without reference to DR 5–102(A). If the court finds that the testimony is admissible, then that attorney, opposing counsel, or the court *sua sponte,* may make a motion requesting the attorney to withdraw voluntarily or be disqualified by the court from further representation in the case. The court must then consider whether any of the exceptions to DR 5–102 are applicable and, thus, whether the attorney may testify and continue to provide representation. In making these determinations, the court is not deciding whether a Disciplinary Rule will be violated, but rather preventing a potential violation of the Code of Professional Responsibility."

Thus, after the trial court has reviewed and made a determination of the admissibility of the testimony that counsel might present, the court must make a further determination as to whether any of the exceptions to DR 5–102 may be applicable in the matter before the court.

The exceptions to DR 5–102 are to be found in subsections (A) and (B). DR 5–102(A) provides in part "except that he may continue the representation and he

or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4)."

DR 5–101(B)(4) provides that a lawyer may testify "[a]s to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

There is also the exception, as provided in DR 5–102(B), where legal counsel learns, or it is obvious that he will be called, as a witness by the opposition:

"[H]e may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

The trial court found that the circumstances of this case present a situation of adverse interest between Mr. and Mrs. Jackson "sufficient to disqualify Mr. Jackson from representing his client," and that "clearly, Mr. Jackson's proposed testimony will be prejudicial to Mrs. Jackson."

It is not to be denied that an advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. (EC 5–9 of the Code of Professional Responsibility.) However, Mr. Jackson has stated both at the disqualification hearing in the trial court and again before this court that he does not intend to call himself as a witness. It may be argued that if Mr. Jackson is called by the opposition that opposing counsel might be handicapped a bit in challenging the credibility of opposing counsel as a witness. However, we conclude that any such difficulty would remain even though Mr. Jackson were not continuing as counsel, but was appearing only in the capacity of the husband of the plaintiff.

The Disciplinary Rules have, in the main, been promulgated to maintain a high standard of performance by legal professionals and in so doing, protect the best interests of the legal and judicial systems as well as the clientele and litigants whom they serve. Where there is shown to be prejudice to a client in a given matter occasioned by the unprofessional activity of the client's legal counsel, it is not only the province, but the duty, of the trial court to take such action as necessary to abate the source of the prejudice.

Reviewing the totality of this matter, it is hard to determine where the prejudice to Mrs. Jackson would be if Mr. Jackson is called as a witness by the opposition. Pursuant to the exception contained within DR 5–102(B), where legal counsel learns, or it is obvious that he will be called as a witness by the opposition, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client. Here, there has been no testimony given by Mr. Jackson and, in fact, he may not be called by the opposition. In any event, any such testimony, if ever given, must be shown to be

prejudicial to the client. No specificity as to any such prejudicial testimony has been shown here. It is particularly difficult to conclude that there is or will be any prejudice to Mrs. Jackson in that Mrs. Jackson has vociferously expressed herself to the effect that she wants Mr. Jackson to be her legal counsel. A client may, in a given case, waive any conflict of interest or prejudice involving his or her counsel. However, the trial court in all cases retains the inherent right to review all of the circumstances of such waiver in furtherance of ethical principles.

Here, we conclude that the evidence before the trial court does not show or support a finding that the continued legal representation of plaintiff by Mr. Jackson would be prejudicial to Mrs. Jackson as a legal client of Mr. Jackson.

As the court held in *Spivey v. Bender* (1991), 77 Ohio App.3d 17, 22, 601 N.E.2d 56, 58–59, disqualification " 'should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint.' " *Id.*, citing *Glueck v. Jonathan Logan, Inc.* (C.A.2, 1981), 653 F.2d 746.

We find no apparent facts presented here that would show a risk of trial taint and, therefore, hold that the trial court did abuse its discretion in disqualifying Mr. Jackson.

We hereby sustain plaintiff's assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand this matter to that court for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and PETREE, JJ., concur.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, sitting by assignment.