### In re Consolidated Bankruptcy ESTATES OF DUBLIN SECURITIES, INC., DUBLIN MANAGEMENT, INC. and DUBLIN STOCK TRANSFER, INC., Debtors.

### Myron N. TERLECKY, Chapter 7 Trustee of the Consolidated Bankruptcy Estates, Plaintiff,

### v.

### NSC CONSULTING CORPORATION c/o Neil S. Clark, President, Defendant.

Bankruptcy No. 93–55053.
Adversary No. 96–0353.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

May 12, 1997.

---

*Anderson,* 936 F.2d 199, 204 (5th Cir.1991); *In re Briscoe Enterprises,* 994 F.2d 1160, 1170 (5th Cir.1993).

**5.** *See Airlease,* 844 F.2d at 109.

John R. Climaco, Richard M. Knoth, Shannon P. Haggerty, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Co., L.P.A., Cleveland, OH, for Defendant.

Paul W. Leithart, II, Mark W. Iannotta, Strip, Fargo, Schulman & Hoppers Co., L.P.A., Columbus, OH, for Plaintiff–Trustee.

Mark Schlachet, Cleveland, OH, for Debtors.

### OPINION AND ORDER GRANTING MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on a motion by Myron N. Terlecky, trustee of the jointly administered bankruptcy estates of Dublin Securities, Inc. ("DSI"), Dublin Management, Inc. ("DMI") and Dublin Stock Transfer, Inc. As trustee, Mr. Terlecky is the plaintiff in this adversary action. As plaintiff, the trustee has moved to disqualify the law firm of Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A. ("The

Climaco Firm") as counsel for the defendant. The Climaco Firm opposed the motion and the Court heard the matter on February 27, 1997.

The Court has jurisdiction in this proceeding under 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (H) and (O) which this bankruptcy judge may hear and determine.

On August 18, 1993 DSI filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Ohio. DSI was converted to a proceeding under chapter 7 on June 10, 1994. Plaintiff was then appointed the successor trustee on August 25, 1994.

On April 10, 1992, the chief operating officer of DSI, Clarence J. "Red" Eyerman, sent a letter to its former counsel indicating that The Climaco Firm would be representing Eyerman's family and his various entities (including DSI). The Climaco Firm represented DSI in all legal matters from April 1992 until August 1993. During the course of that representation, The Climaco Firm billed DSI a total of $793,620.92 and was paid $478,186.51. Billing records submitted as evidence describe the extent of that representation.

The trustee argues that The Climaco Firm's past representation of DSI disqualifies that firm from now representing the defendant in this adversary action brought by DSI against NSC Consulting Corp.

The Climaco Firm admits the fact of its past representation of DSI, but denies that this matter is substantially related to any matters for which it represented DSI and asserts further that the trustee has waived any attorney/client privilege which DSI might wish to protect.

Rules governing the conduct of attorneys before the Bankruptcy Court and any disqualification of counsel on ethical grounds are as provided in Rule 83.4(f), formerly known as 2.6, of the Local Rules of the United States District Court for the Southern District of Ohio. See S.D. Ohio L.B.R. 4.0. District Court Rule 83.4(b) adopts the Model Federal Rules of Disciplinary Enforcement ("MFRD") to govern the conduct of attorneys practicing in this court. Rule IV(B) of the MFRD defines misconduct by attorneys by reference to the Code of Professional Responsibility as adopted by the Supreme Court of Ohio.

The Canons and Disciplinary Rules, as adopted by the Supreme Court of Ohio to govern the conduct of attorneys in this state, which impact on this dispute are Canon 4, Disciplinary Rule 4–101 and Canon 9.

Canon 4 requires a lawyer to preserve the confidences and secrets of a client. Disciplinary Rule 4–101 further requires that: ... a lawyer shall not knowingly (1) reveal a confidence or secret of his client; (2) use a confidence or secret of his client to the disadvantage of the client, or (3) use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure. Canon 9 requires a lawyer to avoid even the appearance of professional impropriety.

In this circuit a three-part test is applied to determine whether a party's attorney shall be disqualified for a conflict of interest. First, the moving party must be a former client of the adverse party's counsel. That relationship can be consensual and contractual, or it can be implied. Second, there must be a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit. Third, the attorney whose disqualification is being sought must have had, or have been likely to have had in the course of his prior representation of the client, access to relevant confidential information. *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882 (6th Cir.1990). The primary purpose for such a disqualification is to protect the confidentiality of information received from the former client, even if such information is only potentially involved.

The ability to deny one's opponent the services of capable counsel is a potent weapon. Courts must be sensitive to the competing public policy interests involved: preserving client confidences and public respect on the one hand and, on the other hand, permit-

ting a party to retain the counsel of his choice. *Manning v. Waring, Cox, James, Sklar, and Allen*, 849 F.2d 222 (6th Cir.1988). The cases are factually driven and attempt to strike a balance between these public policy interests.

The first part of the test requires the trustee to show that The Climaco Firm had an attorney/client relationship with DSI or the other debtors, whether contractual or implied, such that the firm could be considered to have acted as counsel. Such representation is not denied. The Climaco Firm represented DSI during an extensive period of time in varied matters, including certain state court litigation involving DSI's issuance of certain securities.

The second part of the test is that there must be a substantial relationship between the subject matter of the counsel's prior representation and the issues in this suit. The Climaco Firm denies that such a relationship exists.

■ In this adversary action the trustee seeks to recover from NSC certain payments made to NSC from DSI or DMI for consulting services. Those services performed by NSC related to representation of DSI's interests before certain legislative and executive agencies of the state government. In connection with this representation between May 8, 1991 and December 31, 1992, NSC was to execute a subcontract with Public Policy Consultants, Inc., an entity owned and operated by Paul Tipps. The trustee alleges that some of the payments to NSC were fraudulent transfers either because the payments were made by one of the debtors which was not a party to the NSC/DMI contract or because the payment amounts were in excess of amounts specified under the contract.

The link between The Climaco Firm's prior representation of DSI and the facts underlying this adversary appear to center on a relationship with Paul Tipps, owner and principal of Public Policy Consultants, Inc., the company with which NSC had a subcontract in connection with its contract with DSI.

The trustee states that a review of DSI records reveals references to Paul Tipps in connection with The Climaco Firm's representation of DSI in certain state court lawsuits involving individual unit purchasers of certain securities brokered by DSI. The legality of those brokerage activities was an issue in those suits. In connection with those matters there are references to meetings between The Climaco Firm and Tipps relating to the political nature of the investigation and to strategies for defense.

Information prepared by Tipps as part of its subcontract with NSC in connection with NSC's consultation contract with DSI was used by DSI in its defense to the state court actions. In other words, in its representation of DSI in 1992 and 1993, The Climaco Firm utilized for DSI's defense materials prepared for DSI by Tipps. That work by Tipps was performed in connection with the contract at issue in this adversary. One issue in this adversary is whether payments to NSC, which would presumably include monies NSC passed on to Tipps' company, were in excess of the reasonable value of NSC's services.

Based on those facts, this Court finds that there is relationship between the subject matter of this adversary action and The Climaco Firm's prior representation of DSI. It is possible that such relationship could be substantial. Accordingly, the second prong of the test for disqualification of counsel for conflict of interest has been met.

■ The third part of the test for disqualification requires that the law firm sought to be disqualified be shown to have had access to relevant confidential information in the course of the prior disqualifying representation. The Climaco Firm does not deny that confidential information relating to DSI was imparted to it. It claims, however, that any privilege resulting from such confidentiality has been expressly waived by the trustee in connection with certain criminal prosecutions brought against principals and agents of DSI in state court.

The effect of a waiver of the attorney/client privilege upon a disqualification of counsel for a conflict of interest is not easily resolved. The trustee, as the representative of these consolidated estates, waived the confidentiali-

ty·of the debtors' communications with certain of their attorneys, including The Climaco Firm, as to a special prosecutor appointed to investigate alleged criminal acts committed by certain of the debtors' officers and employees. As a result of that waiver The Climaco Firm produced records and communications to the special prosecutor relating to the debtors' registration and sales of securities and warrants and other transactions. That waiver produced facts which were testified to in certain criminal actions. As a consequence, an objection to testimony based upon the attorney/client privilege probably would not be sustained.

The problem is that waivers for purposes of excluding evidence in a court proceeding tend to be rather broadly interpreted in favor of the testimony. *See, e.g. In re Grand Jury Proceedings October 12, 1995,* 78 F.3d 251 (6th Cir.1996). Such interpretation is understandable, because the privilege keeps out evidence which may lead to discovery of relevant facts.

█ Inquiry for the purpose of establishing a conflict of interest in an adversary's attorney, however, does not proceed from the same assumptions or work for the same goals. Just because confidentiality has been waived to help establish facts underlying certain criminal actions does not mean that the client has agreed that its former attorneys may use confidential information obtained by former attorneys in the course of a prior representation to defeat the client in the subsequent actions. In the first instance the client has agreed not to stand behind a shield of privilege· in a conquest for facts in a criminal proceeding. In the second instance, applying that earlier waiver, would mean that the client has agreed to arm its opponent in a civil action with all its confidences so that the opponent will have a possible road map to defeat a civil action against it.

█ In addition to the inquiry as to whether a waiver reaches to that extent, the conflict of interest issue involves matters of professionalism or appearance of professionalism. The ethical obligation under Canon 4 is broader than the attorney-client privilege. *Cannon v. U.S. Acoustics Corp.,* 398 F.Supp. 209, 222 (N.D.Ill.1975). "This ethical pre-

cept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." *Id.* (quoting EC 4–4). Therefore, even if the trustee is deemed to have waived the debtors' attorney-client: privilege with respect to The Climaco Firm, this Court, in furthering this ethical precept, retains the inherent right to examine the totality of the circumstances involved in the waiver. *Jackson v. Bellomy,* 105 Ohio App.3d 341, 663 N.E.2d 1328, 1333 (1995).

This Court finds that the circumstances surrounding the waiver strongly indicate that the trustee, as the representative of these consolidated estates, did not consent to the use of confidential information by The Climaco Firm in this action. Furthermore, the Court concludes that the use or apparent use of such information would violate The Climaco Firm's ethical obligations under Disciplinary Rule 4–101 and/or Canon 9.

Based on the foregoing, the Court **GRANTS** the trustee's motion to disqualify The Climaco Firm from representing any party in this adversary proceeding. Accordingly, The Climaco Firm shall promptly withdraw from any further representation of defendant NSC Consulting Corporation in this matter.

**IT IS SO ORDERED.**