DECISION
{¶ 1} Ironically, as much as seven years ago, this court noted that the " `history of this case is a rather lengthy and tedious one rent with a multitude of litigious moves and countermoves by both parties.' " Jackson v. Bellomy (1995), 105 Ohio App.3d 341,344 ("Bellomy I"). The situation has only grown more complicated. As such, the following is the briefest possible recitation of the facts precipitating the issues presently before us.[1]
{¶ 2} The litigation underlying this appeal commenced in 1993 as a simple property line dispute between neighbors: the appellant, Mrs. Helene Jackson and the third-party plaintiffs-appellees, Craig and Pamela Bellomy ("Bellomys"). Soon after the original complaint was filed, the Roman Catholic Diocese of Columbus ("Diocese") was included as a third-party defendant to the litigation as the common grantor of the properties; James A. Griffin, Bishop of the Diocese ("Bishop Griffin"), was later substituted in place of the Diocese. Numerous complaints and counterclaims were asserted by and against the several parties regarding the correct placement of the boundary line and reformation of the deeds. Further complicating the matter, satellite issues, from the filing of motions for sanctions and affidavits of disqualification, to the disqualification and eventual reinstatement of Mr. Michael Jackson as appellant's attorney,[2] evolved at an alarming speed.
{¶ 3} In December 1996, the parties filed a total of six overlapping motions for summary judgment. On March 20, 1997, in a 56 page opinion, the trial court issued its ruling on the motions, which initiated a new round of cross-filings regarding the possible imposition of sanctions. However, before the court issued a final judgment entry memorializing its ruling, the parties began negotiating a settlement agreement encompassing all outstanding claims and motions.
{¶ 4} On May 5, 1997, instead of a scheduled hearing on sanctions, the parties sought to reach the final terms of their settlement. Neither Mrs. Jackson nor her attorney Mr. Jackson were present in the conference room during the final negotiations. Instead, Mr. James Reuss, acting as counsel for the Jacksons, negotiated directly with the Bellomys (accompanied by their counsel) and with counsel for Bishop Griffin. The parties, having agreed to settle all matters pending in the litigation, emerged from the conference room and all concerned reconvened before the trial court.
{¶ 5} Mr. Reuss recited the terms of the agreement for the record with additions and explanations provided by opposing counsel. Subject to a judgment entry memorializing the agreement in detail, which was to be circulated and agreed to by counsel, Mr. Reuss announced the placement of the newly agreed to boundary line between the Jacksons' and the Bellomys' properties. He further related that Bishop Griffin had agreed to pay confidential monetary settlements to both opposing parties. The Bellomys' counsel, Mr. Fagin, added there would be a release signed by all parties and all attorneys regarding any prior, pending, or related future claims. And, following an off-the-record discussion, Mr. Fagin reported that the Bellomys would be granted an easement, which would run with the land, for the purpose of maintaining the fence on the Jacksons' side of the property line. At long last, this case had ostensibly come to an end.
{¶ 6} However, the May 5, 1997 settlement agreement ("May agreement") failed to end this contentious lawsuit. Instead, it merely served as the foundation for the circumstances of the present appeal, as all of the assignments currently presented for review are related to the terms or conduct resulting from the May agreement.
{¶ 7} As counsel began to prepare and circulate the final judgment entry, it became apparent that the exact physical location of the reformed boundary line and the existence of an easement were still disputed. On August 29, 1997, appellant opened another round of filings with a motion to enforce the May agreement with the property boundary exactly as read in court, dubbed the "garage line," but without the provision for an easement. On September 15, 1997, the Bellomys responded with a memorandum contra and their own motion to enforce the May agreement. Therein, the Bellomys asserted that the actual settlement explicitly contemplated using the fence as the reference for the reformed boundary, not the intangible "garage line," as well as the existence of an easement. Also filed on September 15, 1997, were Bishop Griffin's memorandum contra appellant's motion to enforce and, more importantly, the Bellomys' motion for sanctions against appellant, and Mr. Jackson as her counsel, which characterized the position taken by appellant in her motion as absurd and frivolous.
{¶ 8} On October 17, 1997, in response to the foregoing, the trial court held an evidentiary hearing to determine whether the May agreement was enforceable and, if so, what were the terms of that agreement. Appellant, the Bellomys, and Mr. James Knoll, a finance director for the Diocese who was present at the May 5, 1997 hearing, provided testimony as to their understanding of the May agreement. On November 7, 1997, the trial court filed a decision in which it concluded that the May agreement represented a "meeting of the minds * * * and that a binding contract exist[ed] among the parties relating thereto." Bellomy II, supra. Furthermore:
{¶ 9} "It is a stretch of one's imagination and defies logic to believe that anyone would ignore the existence of a standing fence * * * in negotiating a lot line * * * but instead refer only to an imaginary line[.] * * *
{¶ 10} "Based on the May 5th Agreement and the testimony presented at the evidentiary hearing, the Bellomys' understanding of the on-the-ground boundary line is more reasonable. The on-the-ground boundary line is the fence between the two properties. * * *" Id.
{¶ 11} The Bellomys were also granted the three-foot easement referenced in the May agreement.
{¶ 12} Consequently, appellant filed a complaint with this court for a writ of prohibition seeking to prevent the trial court from signing a judgment entry finalizing the terms of the settlement. On December 15, 1997, the trial court journalized an entry incorporating its previous decision. In a February 26, 1998 memorandum decision, this court denied the requested writ and granted summary judgment in favor of the trial judge; appellant appealed to the Ohio Supreme Court. On November 10, 1998, the Supreme Court affirmed that judgment. State ex rel. Jackson v. Miller (1998), 83 Ohio St.3d 541.
{¶ 13} On June 7, 1999, the trial court issued a final appealable order incorporating its December 1997 entry and finalizing the terms of the May agreement between the parties. Appellant appealed that order as well. This court affirmed the trial court's judgment in an opinion rendered March 30, 2000. Bellomy II, supra. On May 4, 2000, in yet another memorandum decision, appellant's subsequent motion for reconsideration was also denied. Appellant's attempts at appeal were finally ended when the Ohio Supreme Court declined jurisdiction on August 2, 2000, and denied a motion to reconsider on September 20, 2000.
{¶ 14} As the foregoing litigation transpired, the parties and their counsel further busied themselves with the issue of sanctions, introduced by the Bellomys' motion of September 15, 1997. On January 30, 1998, the Bellomys filed a request for a hearing on the outstanding motion. And, on June 25, 1999, the trial court held a hearing to examine the nature of Mr. Jackson's conduct subsequent to the May agreement.
{¶ 15} At the June 25, 1999 oral hearing, the trial court clarified that it would hear evidence relevant to the portion of R.C.2323.51 defining frivolous conduct as conduct which "serves merely to harass or maliciously injure another party to the civil action." R.C.2323.51(A)(2)(a)(i). Mr. Fagin presented no witnesses while arguing his position to the court. Instead, he informed the court that the motions and filings already submitted and part of the court's file, as well as the proceedings of October 17, 1997, comprised the foundation of his evidence. Mr. Jackson first called appellant, and then himself, to testify; Mr. Fagin cross-examined both witnesses. Mr. Jackson also questioned Mr. Fagin. Thereafter, the court took the matter under advisement, reiterating that it would take the record of proceedings subsequent to the May agreement into account, and adjourned the hearing.
{¶ 16} On June 16, 2000, after this court had ruled on appeal, but before the Ohio Supreme Court declined jurisdiction, the trial court journalized its decision and entry granting the Bellomys' motion for sanctions. Therein, the court stated that "[a]pplying the statute to the facts in this case leads to the unavoidable conclusion that Jackson's conduct subsequent to May 5th falls within the purview of R.C. 2323.51." The court concluded:
{¶ 17} "* * * Consequently, this Court has no reservation in asserting that Jackson created the controversy regarding the fence, solely for the purposes of harassing opposing part[ies] and frustrating the finality of this case. As a result, the Court finds Jackson's conduct subsequent to the May 5th agreement was frivolous. Accordingly, the Bellomys' Motion for Sanctions is hereby GRANTED. * * * Attorney fees are to be calculated in accordance with the provisions of R.C. 2323.51." (Emphasis sic.)
{¶ 18} On September 27, 2000, the Bellomys filed a "Motion for Hearing to Finalize Remaining Issues." The motion raised four matters in need of finalization, including: (1) a hearing on the amount of fees awarded by the trial court's June 16, 2000 decision; and (2) a determination of the appropriateness of post-judgment interest on the monetary settlements purportedly reached in the May agreement with Bishop Griffin. On August 28, 2001, the court set an October 26, 2001 date to hold such a hearing, which was later postponed until October 31, 2001.
{¶ 19} Several matters were covered at the October 31, 2001 hearing ("October hearing"). Of those mentioned above, the issue of post-judgment interest due under R.C. 1343.03 was discussed first. After listening to arguments from each party, the court rendered its decision from the bench. Regarding the amount owed to the Bellomys, the court found that interest, as provided by the statute, should be paid from the date of judgment, June 7, 1999. As to appellant, the court found that interest started as of September 20, 2000, when her appeals were exhausted and the judgment amount became due and owing. The trial court instructed respective counsel to prepare entries reflecting its decision.
{¶ 20} The trial court then progressed to the sole remaining issue, the appropriate amount of attorney fees due as a consequence of sanctions granted on June 16, 2000. Mr. Fagin presented and explained an itemized list of the fees requested pursuant to the award for sanctions; the list was later admitted into evidence. Mr. Jackson followed with his argument, to which Mr. Fagin was allowed to respond. The court then announced its decision from the bench, awarding the Bellomys a total of $9,740.
{¶ 21} Following the trial court's pronouncement, Mr. Jackson protested that, when the court issued its finding, he had only made part of his statement and had not yet cross-examined Mr. Fagin. The trial court, stating its belief that Mr. Jackson had concluded his case, allowed him to finish his statement, but would not permit him to cross-examine opposing counsel. Given the repeated and unheeded requests that Mr. Jackson confine his statement to the relevant issue of the hearing (i.e., the amount of reasonable and necessary fees), the trial court eventually suggested that he submit a post-hearing statement to make his arguments as they related to the appropriate issue and context of the hearing. Thereupon, the hearing was adjourned.
{¶ 22} On November 14, 2001, Mr. Jackson made two more filings pertinent to this appeal. First, regarding the settlement with Bishop Griffin, he submitted a motion for relief from judgment, maintaining appellant's entitlement to the same interest computation as that applied on behalf of the Bellomys. Second, Mr. Jackson proffered a post-hearing statement, in which he raised a myriad of topics, some relevant to the issue of a sanctions award, and some not. One of the latter was an August 1999 police report recounting an encounter between Mr. Fagin and the Bexley police. Mr. Jackson purportedly included and discussed the report to rebut a statement made by the trial judge in an unrelated entry filed and provided to counsel at the start of the October hearing.[3]
{¶ 23} On November 21, 2001, responding to the post-hearing statement, Mr. Fagin filed a motion to strike those portions that referred to or discussed the police report. Pursuant to Civ.R. 11, the motion further requested an award of related attorney fees as sanctions against appellant and her counsel for the inclusion of the "scandalous or indecent" matter, especially since it bore no relevance to the issue of an appropriate award of attorney fees under the prior award. Id.
{¶ 24} At long last, on December 13, 2001, the trial court journalized a final appealable order. That decision and judgment entry addressed several outstanding motions and incorporated for purposes of appeal its prior entries ordering the start of interest from September 20, 2000, concerning appellant's settlement with Bishop Griffin, and granting attorney fees and expenses to the Bellomys pursuant to R.C.2323.51.
{¶ 25} With respect to outstanding issues affecting this appeal, the trial court denied appellant's November motion for relief from judgment as premature as no entry regarding that decision was signed until December 13, 2001.[4] In addition, the court granted Mr. Fagin's motion to strike the discussion of the Bexley police encounter and for related sanctions, stating:
{¶ 26} "* * * Inclusion of such inflammatory matter in this case, which is totally unrelated to the alleged incident, is outrageous. Such outrageous conduct is addressed in Civ.R. 11, which provides for sanctions when `scandalous or indecent matter is inserted in a pleading.' Clearly, this matter falls within the parameters of Civ.R. 11. * * * Further, the Court awards to Fagin attorney fees for the time expended to prepare and file his Motion. * * *"
{¶ 27} The court also ordered Mr. Fagin to provide an analysis of time spent on the motion. The December 13, 2001 final appealable order was subsequently replaced by a nunc pro tunc judgment entry on December 20, 2001 ("December judgment").
{¶ 28} The matter is now before us upon timely appeal. Appellant asserts the following assignments of error:
{¶ 29} "I The trial court abused its discretion in finding frivolous conduct.
{¶ 30} "II The trial court abused its discretion, violated R.C.2323.51, and denied due process in determining the amount of sanctions against Mrs. Jackson.
{¶ 31} "III The trial court erred in delaying the start of interest on an amount to be paid to Mrs. Jackson.
{¶ 32} "IV The trial court erred in denying relief from judgment.
{¶ 33} "V The trial court abused its discretion in applying Civ.R. 11."
{¶ 34} Appellant's first assignment of error asserts that the trial court abused its discretion by finding appellant's conduct to be frivolous and imposing sanctions under R.C. 2323.51. Similarly, in her second assignment of error, appellant argues that the trial court abused its discretion in determining the amount of attorney fees to be imposed as sanctions, by violating the applicable procedure set forth in R.C.2323.51 and denying due process, during the October hearing.
{¶ 35} The version of R.C. 2323.51 applicable to this case provides the following definition of frivolous conduct:[5]
{¶ 36} "(2) `Frivolous conduct' means conduct of a party to a civil action or of [her] counsel of record that satisfies either of the following:
{¶ 37} "(a) It obviously serves merely to harass or maliciously injure another party to the civil action;
{¶ 38} "(b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."
{¶ 39} As this court discussed in Wiltberger v. Davis (1996),110 Ohio App.3d 46, the applicable standard of review is dependent upon which of the above definitions was used by the trial court in its determination. Here, the trial court reviewed appellant's conduct, and thus found it to be frivolous, under the first definition. (Dec. 20, 2001 Judgment Entry, ¶ 14-16.) Therefore, given the predominantly factual nature of such a determination, the trial court's decision will not be reversed absent an abuse of discretion. State ex rel. Fant v. Sykes (1987), 29 Ohio St.3d 65. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, in recognition of the "deference appropriate in reviewing a trial court's factual determinations; * * * we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings." Wiltberger at 52.
{¶ 40} R.C. 2323.51 further outlines the procedure that a trial court must follow prior to making an award of attorney fees for frivolous conduct under the statute. Specifically, according to R.C. 2323.51(B)(2), a trial court must:
{¶ 41} "(a) [Set] a date for a hearing to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award;
{¶ 42} "(b) [Give] notice of the date of [that] hearing * * * to each party or counsel of record who allegedly engaged in frivolous conduct and to each party allegedly adversely affected by frivolous conduct; [and]
{¶ 43} "(c) [Conduct] the hearing described in division (B)(2)(a) of this section, allow[ing] the parties and counsel of record involved to present any relevant evidence at the hearing, including evidence of the type described in division (B)(5) of this section, determines that the conduct in question was frivolous and that a party was adversely affected by it, and then determines the amount of the award to be made."
{¶ 44} R.C. 2323.51(B)(5) provides that any party who may be awarded reasonable attorney's fees, and such party's counsel, may submit an itemized list or other evidence of the legal services necessitated by the conduct at issue, as well as evidence of the time so spent and the fees incurred for those services.
{¶ 45} Therefore, as long as the trial court follows the procedures outlined by R.C. 2323.51, its judgment finding appellant's conduct to be frivolous and awarding attorney fees as sanctions under the statute will not be disturbed if it is supported by the evidence. Appellant does not challenge the procedure of the hearing conducted to determine whether her conduct was frivolous. However, it is worth mentioning that a hearing date was properly set and notice was provided to all involved. The primary issue as to appellant's first assignment of error is whether the trial court abused its discretion in deeming the conduct frivolous.
{¶ 46} As mentioned in the facts above, the trial court entertained arguments from both parties at the June 25, 1999 hearing to determine whether conduct was frivolous. The issue, in essence, was whether appellant's filing a motion to enforce the exact terms of the May agreement, i.e., using the "garage line" to determine the boundary, though not including an easement, was taken merely to harass opposing parties and, thus, interpose delay. While Mr. Fagin declined to introduce witness testimony, he did inform the court that the evidence he would submit for consideration was fully developed and documented within the court's case file. Therefore, in the interest of time and efficiency, he referred the court to the record.
{¶ 47} Appellant objects to the use of this evidence by the trial court, arguing that pursuant to Pisanick-Miller v. Roulette Pontiac-Cadillac GMC, Inc. (1991), 62 Ohio App.3d 757, paragraph two of the syllabus, "[a] motion for attorney fees under R.C. 2323.51 must be decided solely upon the evidence presented at the hearing" and not upon other evidentiary materials. However, because of the intensely factual nature of the case at bar coupled with the trial judge's knowledge of the history of proceedings, we must disagree. We believe that to require the Bellomys to reproduce evidence of documents and proceedings already in the record would be an unnecessarily "pointless gesture." Murrell v. Williamsburg Local School Dist. (1993), 92 Ohio App.3d 92, 96.
{¶ 48} The trial court then had the opportunity to listen to and evaluate the testimony of both appellant and Mr. Jackson. Both testified to the fact that the fence had never been used as a benchmark for determining the boundary line. In addition, neither recalled discussing granting an easement to the Bellomys, and if they had, the idea had been rejected. Furthermore, both of the Jacksons testified that neither had heard the provision regarding the easement when it was read into court. When called by Mr. Jackson, Mr. Fagin testified that the fence was indeed the benchmark used during the settlement negotiations.
{¶ 49} Thus, at the conclusion of the hearing, the trial court had several sources of information, relaying multiple versions of the facts. As reflected in its June 16, 2000 decision, the conclusion reached by the trial court after sifting through and applying R.C. 2323.51 to that evidence was that appellant's conduct amounted to creating a controversy "solely for the purposes of harassing opposing part[ies] and frustrating the finality of the case." Further, appellant's conduct placed the burden of an unending lawsuit, prolonged specifically by conflict created by appellant, as well as imposing the burden of responding to an endless stream of suspect motions on opposing parties. Therefore, the trial court found appellant's conduct to be frivolous under R.C. 2323.51, and imposed sanctions in the form of attorney fees on behalf of the Bellomys.
{¶ 50} Given the foregoing, there is no indication that the trial court committed an abuse of discretion. There was competent, credible evidence, in the form of witness testimony, as well as the record of proceedings leading from the May agreement to the hearing to support the trial court's finding. Furthermore, it is widely held that, because of the superior position in which the trial court sits to see and hear witnesses testify, the weight and credibility to be assigned to the evidence presented is a matter distinctly within their realm as the trier of fact. State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. Therefore, appellant's first assignment of error is not well-taken and is overruled.
{¶ 51} We now move on to appellant's second assignment of error. Therein, appellant argues that the trial court abused its discretion in awarding the Bellomys sanctions in the amount of $9,740 in attorney fees and costs. Furthermore, the second assignment of error essentially challenges the procedure followed during the October hearing.
{¶ 52} First, appellant alleges that she was not afforded adequate notice in that her attorney did not receive Mr. Fagin's amended itemized list of fees until the day of hearing. However, the procedural requirement regarding notice in R.C. 2323.51(B)(2)(b) refers to notice of the hearing, not to notice of the exact evidence that will be submitted at that hearing. Further, R.C. 2323.51(B)(5) states only that the party seeking fees may submit, or may be ordered to submit, such a list to be considered by the trial court. There is no requirement that opposing counsel receive the itemization prior to a hearing to determine the amount of sanctions. And, appellant does not argue that she was not provided notice of the hearing itself. Therefore, appellant's argument in this regard is unpersuasive.
{¶ 53} Second, appellant contests Mr. Jackson's lack of opportunity to cross-examine Mr. Fagin at the October hearing. When all other issues to be addressed at the October hearing had been addressed, Mr. Fagin opened the argument regarding the amount of sanctions with his statement. He introduced an itemized list of the fees and costs being requested and explained the breakdown of that list to the court. He further clarified that the fees shown on that list reflected only a portion of the work preformed in response to the appellant's motions. Mr. Jackson was then given the opportunity to present his case. He first addressed several of the points made by Mr. Fagin during his statement and introduction of the itemized list. He progressed to read several excerpts of relevant case law, but moved on to speak regarding matters not in issue such as the court's rationale in previous findings and its denial of his motion for reconsideration and recusal. When the trial court believed that Mr. Jackson had finished his statement, and allowed Mr. Fagin a brief response, it pronounced its ruling from the bench. As such, the court considered the itemized list submitted by Mr. Fagin and concluded that the fees incurred were reasonable and necessary to defend against appellant's offending conduct.
{¶ 54} In Toth v. Toth (1994), 94 Ohio App.3d 561, it was noted that, by failing to allow the party accused of frivolous conduct to elicit testimony, a trial court effectively denied that party the right to the hearing guaranteed by R.C. 2323.51. However, we find the facts of this case to be distinguishable from those in Toth. In that case, the court came to the above conclusion in regard to the hearing held in order to determine whether frivolous conduct existed in the first place. In the case at bar, appellant was not allowed to cross-examine opposing counsel at the hearing to determine the amount of sanctions due. And, appellant was not addressing that issue. Indeed, the trial court repeatedly reminded Mr. Jackson to confine his arguments during his statement to that issue, and he consistently refused to do so by continuing to attack the original finding of frivolous conduct and other peripheral, if not entirely unrelated, matters. Further, the trial court explained its refusal to allow Mr. Jackson to cross-examine in its subsequent decision, stating that it denied appellant's request to cross-examine Mr. Fagin for two reasons:
{¶ 55} "* * * (1) Jackson waived his right to cross examine Fagin when he was afforded the opportunity to speak, prior to the Court's ruling from the bench, and failed to do so; and (2) after the ruling, examination of Fagin could only have led to an exacerbation of the existing acrimony[.] * * *"
{¶ 56} The above reasons are fully supported by the record. And, especially in light of a trial court's broad discretion concerning how to conduct the affairs and maintain the decorum of the court, we cannot say that this constitutes an abuse of discretion.
{¶ 57} Lastly, appellant argues that the trial court improperly awarded fees incurred by the Bellomys in defending the appeal of the trial court's judgment regarding the May agreement. Appellant cites State ex rel. Ohio Dept. of Health v. Sowald (1992), 65 Ohio St.3d 338, to support his contention that R.C. 2323.51 does not contemplate the award of attorney fees in such a context. Therein, the Ohio Supreme Court addressed the issue of whether that court could award attorney fees for defending an appeal of an appellate court's denial of a writ of mandamus pursuant to R.C. 2323.51. After a brief analysis of the statute, the court answered in the negative, explaining: "the statute refers to trial court judgments in civil actions, not to appellate judgments. Accordingly, R.C. 2323.51 does not contemplate awarding attorney fees for defending appeals of civil actions." Id. at 343.
{¶ 58} The facts and context of the Sowald case, however, differ from the case at bar. Indeed, it would appear that the court was referring to the appeal of an appellate court's judgment, not to an appeal of a trial court's original judgment. Furthermore, R.C. 2323.51(A)(1) defines "conduct" as "filing a civil action, asserting a claim, defense, or other position in connection with a civil action, or taking any other action in connection with a civil action." (Emphasis added.) The trial court determined that appellant needlessly prolonged this controversy, intending to harass and annoy opposing parties, by taking the further related action of appealing its decision over a three year period of time.
{¶ 59} Given the foregoing discussion, it does not appear that the procedural mandates of R.C. 2323.51 were disobeyed. Furthermore, the trial court's judgment regarding the amount of sanctions awarded is supported by competent, credible evidence in the record. Moreover, although the trial court may have had its patience tested by the proceedings and duration of this epic lawsuit, we cannot say that it abused its discretion in reaching the above conclusions. Appellant's second assignment of error is not well-taken and is overruled.
{¶ 60} Appellant's third and fourth assignments of error both concern her dispute with Bishop Griffin. In the third assignment of error, appellant asserts that the trial court erred in determining that post-judgment interest on the settlement amount owed by Bishop Griffin would begin to accrue on September 20, 2000, rather than on the day of settlement, May 5, 1997. And, in her fourth assignment of error, appellant argues that trial court erred in denying her motion for relief from that judgment.
{¶ 61} R.C. 1343.03 governs the award of post-judgment interest, and provides in pertinent part:
{¶ 62} "(A) In cases other than those provided for in sections1343.01 and 1343.02 of the Revised Code, when money becomes due and payable * * * upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."
{¶ 63} Appellant asserts that the settlement amount became "due and payable" upon the initial settlement date of May 5, 1997; therefore, according to R.C. 1343.03(A), the trial court should have ordered interest to commence on that date. However, this argument ignores the terms of the settlement as well as the unusual facts of the case. First, as read in court, the terms of the entire agreement, not just that part dealing with the boundary line, were to be finalized by a judgment entry agreed to by all parties. Second, the settlement clearly contemplated that Bishop Griffin would pay an undisclosed amount and, in return, all parties would execute a release. Therefore, the settlement funds would not become due and payable until judgment was rendered and the necessary release was finalized. That date, as the trial court determined at the October hearing, was June 7, 1999, when a final judgment incorporating the agreed to terms of the May agreement, including a release among the parties, was rendered.[6]
{¶ 64} Thus, the remaining question is whether the trial court erred by further delaying the start of interest to September 20, 2000. Appellant maintains that interest continues to run while an appeal is pending; Bishop Griffin disagrees, arguing that appellant should not be granted the benefit of any interest accruing during appellant's lengthy attempts at appeal.
{¶ 65} Appellant is correct to the extent that in applying R.C.1343.03(A) to the event of an appeal, Ohio courts generally hold that, "absent proof of waiver or bad faith on the part of the prevailing party estopping it from claiming interest, interest continues to accrue during the pendency of an appeal, regardless of which party has appealed." Goddard v. Children's Hosp. Med. Ctr. (2000), 141 Ohio App.3d 467, 470; Moore v. Jock (1993), 90 Ohio App.3d 413, 416. And, in such a case, the judgment debtor may only stop the interest from running by tendering unconditional payment of the judgment rendered against him. Moore at 415, citing Warren/Sherer Div. v. Store Equip. Co. (Sept. 27, 1984), Franklin App. No. 84AP-41.
{¶ 66} However, even as appellant urges this court to apply the foregoing to reverse the decision of the trial court, she ignores the very words of exception to the rule: "absent proof of waiver or bad faith on the part of the prevailing party estopping it from claiming interest." In its December judgment, the trial court specifically stated:
{¶ 67} "This latest round of appeals [of the June 7, 1999 judgment] is another in an endless stream of voluminous and legally suspect pleadings and appeals filed by Jackson over the eight year history of this case, necessitating further attorney fees in response. Because of Jackson's continuing course of conduct in this regard, the Court granted interest to Jackson, from September 20, 2000. The judgment was not final for Jackson until her appeals had been exhausted. To have awarded interest to Jackson from any other date would have rewarded her for her litigious behavior * * *."
{¶ 68} Thus, it is clear that the trial court delayed the start of interest until September 20, 2000, to prevent appellant from benefiting from her litigious behavior. In other words, interest was delayed due to appellant's exhibition of "bad faith * * * estopping [her] from claiming interest." Given the foregoing, we cannot say there has been a misapplication of the relevant law. Therefore, appellant's third assignment of error is overruled.
{¶ 69} The fourth assignment of error asserts that the trial court erred in denying relief from judgment. As mentioned above, on November 14, 2001, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B)(5). The trial court denied appellant's motion in its December judgment, stating: "[n]o entry memorializing the Court's decision on this issue was signed or filed until December 12, 2001. Therefore, this Court DENIES Jackson's Motion as premature."[7]
(Emphasis sic.)
{¶ 70} Civ.R. 60(B) states: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment." (Emphasis added.) It follows, then, that a Civ.R. 60(B) motion is not properly entertained prior to the issuance of a final appealable order. Jarrett v. Dayton Osteopathic Hosp., Inc. (1985)20 Ohio St.3d 77, 78. When appellant filed her motion for relief from judgment, no entry had been journalized finalizing the court's order. Therefore, the trial court correctly denied the motion as premature. Appellant's fourth assignment of error is overruled.
{¶ 71} In the final assignment of error, appellant argues that the trial court abused its discretion in imposing sanctions pursuant to Civ.R. 11. As outlined by the facts, supra, after the October hearing, Mr. Jackson accepted the trial court's invitation to file a post-hearing statement in which he could record any relevant argument not yet made in regard to the issue debated at the October hearing, i.e., the appropriate amount of attorney fees to be awarded as sanctions pursuant to R.C.2323.51. A portion of that statement, purportedly included to contradict an observation made by the trial court in the unrelated entry distributed at the beginning of the October hearing, discussed an unpleasant confrontation between Mr. Fagin and the Bexley police. In response, Mr. Fagin filed a motion to strike and for sanctions pursuant to Civ.R. 11. In the December judgment, the trial court granted Mr. Fagin's motion to strike and awarded attorney fees.
{¶ 72} Civ.R. 11 states: "Every pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name * * *. The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. * * * For a willful violation of this rule an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted."
{¶ 73} As is the case with R.C. 2323.51, the trial court's imposition of sanctions under Civ.R. 11 is not to be reversed absent an abuse of discretion. Fant, supra, at 65. Furthermore, a "court is granted wide latitude in determining whether sanctions are appropriate and what type of sanction is appropriate in a given case." Stone v. House of Day Funeral Serv., Inc. (2000), 140 Ohio App.3d 713, 721. While the language of Civ.R. 11 does not mandate a hearing prior to the imposition of sanctions, it does require that the offending conduct amount to a "willful violation" of the rule.
{¶ 74} We have previously held that a hearing should be held before declaring the conduct at issue to be frivolous in order to determine whether there is a willful violation of Civ.R. 11. McCutcheon v. Brooks (1988), 37 Ohio App.3d 110, 112. The purpose of such a hearing is "to provide the attorney an opportunity to establish his or her good-faith basis for filing the [document]." In re Estate of Cain (1994), 92 Ohio App.3d 835, 839, citing McCutcheon. And, although some courts apply a purely subjective standard to an inquiry on the willfulness of a violation under Civ.R. 11, this court recently announced that frivolous conduct "must ultimately be defined within objective limits of legal and factual realities." All Climate Heating and Cooling, Inc. v. Zee Properties, Inc. (Apr. 25, 2002), Franklin App. No. 01AP-784. Therefore, an attorney's subjective beliefs must still appear sound when viewed in the factual context of his or her conduct.
{¶ 75} Accordingly, we now progress with our review of the case at bar. Initially, we note that this case differs substantially from those cases in which we ordered a hearing prior to an award of sanctions. The cases we reviewed in the past involved a determination of whether a pleading or motion contained a suspect argument of law which may or may not have been supported by good grounds based on the signor's knowledge or information and belief. Therefore, investigating the attorney's underlying motive for including a suspect legal argument was necessary for a finding of "willfulness" under the rule.
{¶ 76} The case at hand, however, does not involve the possible misapplication or misinterpretation of law. Instead, the final sentence of Civ.R. 11 is of decisive relevance. Significantly, placed after the language of "for a willful violation of this rule" that sentence simply reads: "[s]imilar action may be taken if scandalous or indecent matter is inserted." Juxtaposition of the language used in the two sentences implies that no separate finding of willfulness is necessary, if the insertion of such material into a pleading or other document has no proper motivation. (See, also, the Advisory Committee Notes to the 1983 Amendment of Fed.Civ.R. 11, in which the Committee commented that the inclusion of scandalous material is itself a strong indication of bad faith.) Indeed, in interpreting the language of Civ.R. 11, the First District Court of Appeals recently stated that an attorney can be subject to sanctions if "the rule is willfully violated, or if a scandalous or indecent matter has been inserted." Riston v. Butler (May 10, 2002), Hamilton App. No. C-010572. (Emphasis added.)
{¶ 77} Applying the foregoing to the facts presented in the record, we cannot say that the trial court abused its discretion in imposing sanctions under Civ.R. 11 without first conducting a hearing. The trial court concluded that Mr. Jackson's discussion regarding the police report within the post-hearing statement was "inflammatory" and "outrageous," and therefore prohibited by Civ.R. 11. Furthermore, the court did have the opportunity to consider the motivation behind the discussion, and determined that it was offered as support for an argument completely irrelevant to the issue in dispute. Given those conclusions, the trial court did not abuse its discretion by acting in an "unreasonable, arbitrary or unconscionable" manner. Blakemore, supra. Therefore, appellant's fifth assignment of error is overruled.
{¶ 78} In accord with the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and PETREE, JJ., concur.
[1] For a more complete synopsis of the facts giving rise to the present action, see Jackson v. Bellomy (Mar. 30, 2000), Franklin App. No. 99AP-691 ("Bellomy II").
[2] See Bellomy I, wherein this court reversed the trial court's judgment disqualifying Mr. Jackson as appellant's counsel.
[3] That entry denied Mr. Jackson's motion for reconsideration and recusal filed July 3, 2000.
[4] Apparently, that entry was not journalized until December 24, 2001.
[5] In State ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999),86 Ohio St.3d 451, the Ohio Supreme Court found the then applicable version of R.C. 2323.51 to be unconstitutional. Therefore, the version in effect prior to the legislation adopting the stricken R.C. 2323.51
controlled the trial court's decision.
[6] 6As previously mentioned, that is the date upon which interest began to accumulate for the Bellomys. Therefore, appellant's assertion in her motion for relief from judgment that the trial court granted interest to the Bellomys as of May 5, 1997, is incorrect.
[7] Again, it appears that the referenced entry, while signed on December 13, 2001, was not actually filed until December 24, 2001.